Argued 30 July; decided 25 August, 1902.

## KIERNAN v. KRATZ.

[69 Pac. 1027.]

STATUTE OF FRAUDS—GUARANTY OF PROMISOR'S OWN DEBT.

1. Where a debtor, in payment of his own obligation, assigns to his creditor the paper of a third person, orally guaranteeing its payment at a certain date if the maker fails to pay before that, the guaranty is an original promise, and not a promise to answer for the debt of another, within the meaning of the statute of frauds (Hill's Ann. Laws, § 785, subd. 2).

PAROL MODIFICATION OF ORAL AGREEMENT.

2. A contract that could have been originally made by parol may be modified in the same way, though it may have been actually in writing.

PLEADING—EXAMPLE OF DEPARTURE.

3.. A complaint alleged that for a valuable consideration defendant assigned to plaintiff certain certificates of deposit issued by a stated bank, guaranteeing to pay the certificates if the bank should not do so by a certain time; that thereafter, at defendant's request, plaintiff surrendered the certificates to the bank and took certain other certificates falling due at later dates in place of the originals, the defendant guaranteeing the payment of the original certificates if the second set should not be paid by the bank when due. The defendant answered, among other things, that plaintiff had, without his consent, extended the time of payment, for a valid consideration, thereby discharging the guaranty. The plaintiff, in reply, averred that defendant ought not to be permitted to say that plaintiff extended the time of payment by taking new certificates, because at the time of taking the original certificates defendant believed the maker of the certificates to be possessed of sufficient assets to discharge its liabilities if its creditors would not insist on immediate payment, and that he requested plaintiff to surrender said original certificates, and in place thereof to accept said extended certificates, "agreeing with the plaintiff to stand responsible for the substituted certificates of deposit exactly as he was responsible upon the original documents, and to the same extent that he was bound to pay the originals," in consequence of which the substitution was made by plaintiff. *Held*, that there was a departure between the complaint and the reply, in that the cause of action stated in the complaint was upon an express guaranty, while the reply counted upon an implied guaranty. .

CONFINING EVIDENCE TO ISSUES MADE BY THE PLEADINGS.

4. It is always desirable that testimony should be confined to the issues made by the pleadings, to the end that the minds of the jury may not be confused by immaterial, and perhaps prejudicial, matters: For example, where the issue was whether a guaranty to pay sundry obligations of a bank under certain conditions had been modified, so that plaintiff might surrender to the bank the original obligations and take others in lieu thereof, to which defendant's guaranty should attach as to the originals, evidence that defendant,

prior to the original guaranty, recommended that extensions be granted by the creditors of the bank is not only immaterial, but prejudicial to defendant.

MATERIAL COLLATERAL EVIDENCE.

5. Though the only issue of fact in a case is whether defendant's guaranty of certain negotiable instruments assigned by him to plaintiff was so modified by agreement as to authorize plaintiff to surrender them to the maker, and accept in lieu thereof other similar instruments payable at definite times in the future, upon the failure to pay which defendant would be liable for the originals, evidence that before defendant's assignment to plaintiff he had signed a memorandum releasing the maker from his obligation to pay when the instruments should be due, and agreeing to accept in installments the money due on the original instruments, is pertinent and material, although collateral.

From Multnomah: ALFRED F. SEARS, JR., Judge.

This is an action by John Kiernan against V. Kratz to recover money. The facts are that on January 8, 1894, plaintiff, in consideration of $14,500, sold and conveyed a flouring mill to the defendant, who, in part payment thereof, assigned to him certain certificates of deposit issued by, and a check drawn on, the Portland Savings Bank of Portland, Oregon, the face value of which, with accrued interest, was the sum of $7,461.42. At that time said bank was in the custody of a receiver, having suspended payment July 28, 1893, notwithstanding which a general belief prevailed that, if extensions could be secured from its creditors until some of its loans could be collected, it would be able to resume business; acting upon which, and as a part of the transaction, defendant stipulated in writing that, in consideration of the acceptance of said commercial paper at par, if the bank should fail to pay the same on or before three years therefrom, he would upon the return of all or any part thereof pay the sums remaining due thereon. *The bank, having secured many of the extensions desired, resumed business April 30, 1894, when said certificates and check were surrendered to the bank by plaintiff, who took in lieu thereof, for the remainder due thereon, eight other certificates of deposit, each for the sum of $713.71, the first payable in three months, and one of the others every three months thereafter, with interest at 6 per cent per annum.*  Two of these latter certificates having been

---

*NOTE.—The sentence between the stars is not as originally written, but as modified on the petition for rehearing.                    REPORTER.

paid at maturity, the bank was again compelled to close its doors, and, after the expiration of the time limited, plaintiff commenced this action to recover the sums due on the remaining certificates, alleging in the amended complaint the facts in substance as hereinbefore stated, and that he was unable to return the original certificates and check to the defendant, for that at his request and for his accommodation he had surrendered them to the bank and taken others in lieu thereof, which he offered to surrender upon payment thereof, and deposited them in court for that purpose; that said bank is, and at all times stated in the complaint was, insolvent, and defendant, though notified of its default, had neglected to pay any part of said certificates.

The answer, having denied the material allegations of the complaint, averred as a first separate defense, that plaintiff, for a valuable consideration, surrendered the original certificates and check to the bank, without defendant's knowledge or consent, and accepted others in lieu thereof, thus defeating the payment of the original obligations, which would otherwise have been made, thereby absolving defendant from the terms of his agreement. For a second defense it is alleged that plaintiff, having accepted new certificates in full payment of the original obligations, discharged defendant from all liability on account of the latter. For a third defense it is alleged that, as a condition precedent to recovering any payment from the defendant, plaintiff was obliged to return to him the original certificates and check, but that, having surrendered them to the bank, he could not do so, thereby exonerating defendant from his guaranty. The reply, having put in issue the allegations of new matter in the answer, averred, in effect, as a further reply to the first separate defense, that the defendant ought not to be permitted to say that plaintiff, for a valuable consideration, surrendered the original certificates and check and granted an extension to the bank, for that on January 8, 1894, defendant believed that it had assets which, when converted into money, would be sufficient to discharge all its liabilities, if its creditors would not insist upon immediate payment; that

about May 18, 1894, he requested plaintiff to surrender said certificates to the bank and to accept others in lieu thereof, agreeing to be responsible upon the latter to the same extent as upon the former, and plaintiff, complying with such request and acting for defendant's accommodation, surrendered the original commercial paper and took the certificates so recommended; wherefore defendant should be estopped, etc. The reply to the allegations of new matter in the second and third separate defenses is substantially the same as the foregoing. A motion to strike out these averments in the reply, on the ground that the facts thus stated were immaterial, having been denied, and a demurrer thereto, for the reason that the matters thus alleged did not state facts sufficient to constitute an estoppel, overruled, a trial was had resulting in a judgment for plaintiff in the sum demanded, and defendant appeals.      REVERSED.

For appellant there was a brief over the names of *Edward & A. R. Mendenhall* and *Fenton, Bronaugh & Muir,* with an oral argument by *Mr. Edward Mendenhall* and *Mr. William D. Fenton.*

For respondent there was a brief over the names of *Henry E. McGinn* and *Thomas H. Ward,* with an oral argument by *Mr. McGinn.*

MR. CHIEF JUSTICE MOORE, after stating the facts, delivered the opinion of the court.

It is contended by defendant's counsel that the agreement of their client to pay the sums remaining due on the original certificates of deposit and check, at the time specified, was a collateral undertaking to answer for the debt of the Portland Savings Bank, which was pre-existing and still subsisting, and could only be enforced when evidenced, as it was, by a writing, and that a modification of such guaranty could only be secured in the same formal manner; but, the alleged alteration thereof having been made by parol, the court erred in refusing to grant a judgment of nonsuit. Plaintiff's counsel, however, maintain that defendant's assignment of the original certificates of deposit and check, though in form a promise to answer for the

debt of another, was, in effect, an agreement to pay his own debt, which need not have been in writing, and hence a modification thereof could be accomplished by parol.

Our statute of frauds, so far as applicable to the case at bar, contains this provision: ''In the following cases the agreement is void, unless the same or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, * * shall not be received other than the writing, or secondary evidence of its contents, in the cases prescribed by law; * * (2) An agreement to answer for the debt, default, or miscarriage of another'': Hill's Ann. Laws, § 785. A well-recognized exception to this rule exists, however, where a debtor assigns funds or securities, or transfers property, to another, who, in consideration of the receipt thereof, orally promises to pay the debtor's obligations to a third person, in which case the latter may maintain an action on such agreement though not a party thereto: *Baker* v. *Eglin,* 11 Or. 333 (8 Pac. 280) ; *Hughes* v. *Oregon Ry. & Nav. Co.* 11 Or. 437 (5 Pac. 206) ; *Parker* v. *Jeffery,* 26 Or. 186 (37 Pac. 712) ; *Brower Lumber Co.* v. *Miller,* 28 Or. 565 (43 Pac. 659, 52 Am. St. Rep. 807). The reason for this deviation from the express provision of the statute is based upon the assumption that the oral promise attaches to the obligation growing out of the receipt of the fund, security, or property, rendering the agreement enforceable by the person for whose benefit it was made: *Feldman* v. *McGuire,* 34 Or. 309 (55 Pac. 872).

1. In *Leonard* v. *Vredenburgh,* 8 Johns. 29 (5 Am. Dec. 317), Mr. Chief Justice KENT, attempting to distinguish between original and collateral promises in cases arising under the statute of frauds, says: ''There are, then, three distinct classes of cases on this subject, which require to be discriminated: (1) Cases in which the guaranty or promise is collateral to the principal contract, but is made at the same time, and becomes an essential ground of the credit given to the principal or direct debtor. Here, as we have already seen, is not, nor need be, any other consideration than that moving between the

creditor and original debtor.    (2) Cases in which the collateral
undertaking is subsequent to the creation of the debt, and was
not the inducement to it, though the subsisting liability is the
ground of the promise, without any distinct and unconnected
inducement.    Here must be some further consideration shown,
having an immediate respect to such liability, for the consider-
ation for the original debt will not attach to this subsequent
promise. * *  (3) A third class of cases, and to which I have
already alluded, is when the promise to pay the debt of another
arises out of some new and original consideration of benefit or
harm moving between the newly contracting parties.    The first
classes of cases are within the statute of frauds, but the last is
not.''

In *Farley* v. *Cleveland,* 4 Cow. 432 (15 Am. Dec. 387), one
Moon, being indebted to the plaintiff, sold and delivered a
quantity of hay to the defendant, who, in consideration thereof,
orally promised to pay the plaintiff the sum Moon owed
him, but, not having done so, plaintiff brought an action to
recover on the promise, and it was held, approving the classifi-
cation made by Mr. Chief Justice KENT, that where a promise
to pay the debt of a third person arises out of some new con-
sideration of benefit to the promisor or harm to the promisee,
moving to the promisor either from the promisee or the original
debtor, such promise is not within the statute of frauds, though
the original debt still subsists and remains entirely unaffected
by the new agreement.    In *Mallory* v. *Gillett,* 21 N. Y. 412, it
was held that an oral promise to pay an existing and continu-
ing debt of another, in consideration of the creditor's releasing
a lien which he held as security for the payment of said debt,
though it was a promise supported by a new and an original
consideration existing between the new contracting parties, re-
sulting in harm to the promisee, was nevertheless collateral;
and that the language of Mr. Chief Justice KENT in his third
classification was misleading, and should be qualified so as to re-
quire that the new consideration should move to the promisor
and be beneficial to him.    In *Brown* v. *Weber,* 38 N. Y. 187, the
rule announced in *Mallory* v. *Gillett,* 21 N. Y. 412, was limited

in its application, the court holding that a promise might be collateral though the new consideration moved to the promisor and resulted in benefit to him. Mr. Justice GROVER, referring to the section of the statute of frauds under consideration, says: "The language shows that the test to be applied to every case is whether the party sought to be charged is the principal debtor, primarily liable, or whether he is only liable in case of the default of a third person; in other words, whether he is the debtor, or whether his relation to the creditor is that of surety to him for the performance, by some other person, of the obligation of the latter to the creditor. In the former case the promise is not within the statute, because the party promising is not undertaking for the performance by another of some duty owing by the other, but for the performance of his own obligation; but in the latter case it is within the statute, because the liability is contingent upon whether another performs his obligation, for whose performance the party sought to be charged has undertaken." In *Ackley* v. *Parmenter*, 98 N. Y. 425 (50 Am. Rep. 693), it was held that to take the case out of the statute there must be a consideration moving to the promisor, either from the creditor or the debtor, and beneficial to him, thus imparting to the promise the character of an original undertaking. In *White* v. *Rintoul*, 108 N. Y. 222 (15 N. E. 318), Mr. Justice FINCH, referring to the New York cases hereinbefore adverted to, says: "These four cases, advancing by three distinct stages in a common direction, have ended in establishing a doctrine in the courts of this state which may be stated with approximate accuracy thus: That, where the primary debt subsists and was antecedently contracted, the promise to pay it is original when it is founded on a new consideration moving to the promisor and beneficial to him, and such that the promisor thereby comes under an independent duty of payment, irrespective of the liability of the principal debtor."

Though the language used by Mr. Chief Justice KENT in *Leonard* v. *Vredenburgh*, 8 Johns. 29 (5 Am. Dec. 317), in the third class stated by him, is regarded as *dicta* and generally

considered as misleading, it has probably been the cause of ingrafting upon the statute of frauds another exception, as follows: The promise of a party, in effect, to pay his own debt. though incidentally guarantying the debt of a third person, is not within the statute, and hence need not be in writing: Browne, Stat. Frauds (4 ed.), § 165; Brandt, Sur. (2 ed.), § 67; 2 Daniel, Neg. Instr. (4 ed.), § 1761; Throop, Verb. Agr. § 661, *et seq.* Thus, in *Browne* v. *Curtiss,* 2 N. Y. 225, a promissory note having been transferred by the payee to his creditor in exchange for his own note held by the latter, and who at the same time endorsed on the note, transferred a guaranty of the payment thereof, it was held that such guaranty was not within the statute of frauds, and was therefore valid, although no consideration was expressed. In *Cardell* v. *McNeil,* 21 N. Y. 336, the defendant, having purchased a horse, delivered in part payment thereof a chattel note of a third person, saying that the maker thereof was good and that he would warrant that plaintiff would get the chattel when the note matured. It was held that the guaranty was not within the statute of frauds. In *Wilson* v. *Hentges,* 29 Minn. 102 (12 N. W. 151), it was held that, where the holder of a third person's contract transfers it to another, upon a consideration moving to himself, his guaranty thereof, made at the same time, and as a part of the transaction, is not a special promise to answer for the debt or default of another, within the meaning of the statute, and therefore need not be in writing. Mr. Justice MITCHELL. speaking for the court, in deciding the case, says: "While the authorities disagree as to the reason for the rule, yet they agree in holding that where the holder of a contract of a third person transfers it to another, upon a consideration moving to himself, his guaranty thereof, made simultaneously with the transfer, and as a part of the transaction, is not a promise to answer for the debt or default of another, within the meaning of the statute; or, as the same thing is sometimes expressed, a guaranty is not within the statute where the debt or contract guarantied was transferred from the guarantor to the guarantee at the time of making the contract of guaranty, upon a consideration

moving wholly between the parties to the guaranty.'' The reasons usually given for the exception to the rule are then stated, in substance, as follows: *first*, that the guaranty made under the circumstances adverted to is not within the statute because it is an extension of the warranty which the law implies upon the sale of any chattel or chose in action, and not a contract created *ab origine* for the purpose specified in the statute of frauds; and, *second*, that such guaranty is, in substance, a promise to pay the guarantor's own debt, and therefore not within the statute, though the debt of a third person be incidentally guarantied. The learned justice further says: ''But whatever may be the best reason for holding such guaranty not within the statute, the doctrine is too well established by an unbroken line of decisions to be now questioned [citing many cases]. * * The only case we have found which even seems to hold otherwise is *Dows* v. *Swett,* 120 Mass. 322. But it will be observed that in that case the note guarantied was never owned by the guarantor, but was executed directly to the guarantee.'' Mr. Browne, in his work on the Statute of Frauds (4 ed.), §§ 165, 165*a,* referring to the Massachusetts case, gives substantially the same reason.

In *Fullam* v. *Adams,* 37 Vt. 391, Mr. Chief Justice POLAND, discussing the section of the statute of frauds under consideration, says: ''If the real substance of the promise be to perform some duty or obligation of the party making the promise, it is not within the statute, though in form it is a promise to pay another's debt, and the result of its performance may affect the payment of the debt of another. And we believe it will be found that in all the cases now regarded as sound, where it has been held that a parol promise to pay the debts of another is binding, the promisor held in his hands funds, securities, or property of the debtor devoted to the payment of the debt, and his promise to pay attaches upon his obligation or duty growing out of the receipt of such fund.'' Elsewhere in the opinion the writer, referring to the decisions of other courts, in which it was held that the oral promise of a party to pay the debt of another, under certain circumstances, was not within

the statute of frauds, remarks: "In some of these cases it is said the promise is not within the statute, because in substance it is a promise to pay the promisor's own debt for the purchased property, and that, although the fulfillment of his promise to pay his own debt has the effect to pay the debt of another, it does not bring his promise with the statute, as this effect is incidental, and not the prinicpal object and purpose of the promise. And where a debtor transfers funds or property to another for the purpose of paying his debt, and the person thus holding the debtor's fund or property promises the creditor to pay his debt, such promise is held good, though not in writing. * * We apprehend the true principle why the promise to the creditor is valid without writing is the same in both these classes of cases. In both the party making the promise holds the funds of the debtor for the purpose of paying his debt, and, as between him and the debtor, it is his duty to pay the debt, so that, when he promises the creditor to pay it, in substance he promises to pay his own debt, and not that of another; and, though the debtor still remains liable for the debt, his real relation is rather that of a surety for the party whose duty it is, and who has promised to pay his debt, than of the principal for whom the owner has become surety or guarantee."

In that case it will be observed that no distinction is made between the classes of cases in which funds, securities, or property of the debtor have been assigned or transferred to a person for the purpose of paying the debt of the former and those in which a person, on account of his own debt, assigns a debt due him from another. In the first case the property of a debtor, subject to a lien, may be surrendered to a person who promises to pay the debt which is a charge thereon, or the debtor may himself transfer his property to another, who, in consideration of the receipt thereof, promises to pay a specified sum which the debtor owes to another person. The surrender of the property subject to the lien is, in effect, the assignment of a legal charge against the property; while the transfer of the property by its owner, for the purpose indicated, creates an equitable

right which attaches to the property to which it is incident, and in each instance the promise of the person to whom the property is transferred, whether by the lien claimant or by the owner thereof, to pay the debt agreed upon, is an original undertaking and not within the statute. In the second case adverted to the assignment of a debt by a creditor, as a conditional payment of his own obligation, is the transfer of a chose in action, having no tangible existence, but being merely a right to personal things of which the owner has not the possession. If the debt assigned by the owner thereof, in payment of his own obligation, were secured, so that the transfer carried with it, as an incident thereto, a right to specific property, such fact would undoubtedly place the case within the first class. But where, as in the case at bar, the debt assigned is unsecured, so that its transfer is not coupled with any right to particular property, another classification besides that given by the court in *Fullam* v. *Adams,* 37 Vt. 391, may well be insisted upon. Thus, where a party, in payment of his own debt, assigns to his creditor a note, bill, or check of a third person, orally agreeing that it will be discharged at a given date, and if not, that he will pay it, upon principle it would seem that his undertaking is original, and he is liable thereon for a breach thereof, for the following reason: The transfer of such paper by indorsement for a contemporaneous debt raises a presumption that the payment is conditional only: 2 Daniel, Neg. Instr. (4 ed.), § 1265; 3 Randolph, Com. Paper (2 ed.), § 1534. If a note is not only indorsed over in payment of goods, but guarantied absolutely by the purchaser, he may still be sued on the original debt: 3 Randolph, Com. Paper (2 ed.), § 1543. A check is only a conditional payment, and discharges the debt if it is paid, and not otherwise: 3 Randolph, Com. Paper (2 ed.), § 1554. Thus, in *Brookline Nat. Bank* v. *Moers,* 45 N. Y. Supp. 997, the defendants having sold plaintiff the check of a third person, promising that it would be paid, and, if not, that they would pay it, it was held that the promise did not involve an agreement to answer for the debt or default of another. In this state the rule is well settled that, if a party give his own note as evidence of

a debt, it will not be an absolute payment unless it was taken by agreement to that effect: *Black* v. *Sippy*, 15 Or. 575 (16 Pac. 418); *Johnston* v. *Barrills*, 27 Or. 251 (41 Pac. 656, 50 Am. St. Rep. 717); *Schreyer* v. *Turner·Flouring Co.* 29 Or. 1 (43 Pac. 719).

Applying these elementary prinicples to the case at bar, when defendant purchased from plaintiff the flouring mill, and assigned in part payment thereof the certificates of deposit and check, the payment of which he guarantied, it rendered the commercial paper thus indorsed in the nature of collateral security for the payment of his own debt, which was not discharged by such assignment.

2. The complaint having set out all the facts in respect to the sale of the mill and the assignment of the commercial paper on account thereof, the action is in the nature of a case based upon the original debt; and as the guaranty alleged could, in the first instance, have been made orally, it was therefore susceptible to modification in the same manner, and hence no error was committed in refusing to grant the judgment of nonsuit.

3. It is contended by defendant's counsel that the allegations of fact set out in the reply as an estoppel are a departure from the averments of the complaint, and that the court erred in overruling their motion to strike out such new matter.    For the purpose of determining the pleader's intention, the complaint and reply, when not repugnant to one another, should be read together, the rule being that, if the reply is designed to affirm the averments of the complaint, by correcting the defendant's mistake in regard thereto, the allegations of new matter in the reply are treated as a new assignment and not as a departure, but if the reply allege matter constituting a new cause of action its averment will be treated as a departure: *Lillienthal* v. *Hotaling*, 15 Or. 371 (15 Pac. 630); *Wyatt* v.·*Henderson*, 31 Or. 48 (48 Pac. 790); *Fisk* v. *Basche*, 31 Or. 178 (49 Pac. 981); *Lavery* v. *Arnold*, 36 Or. 84 (57 Pac. 906, 58 Pac. 524); *Cederson* v. *Oregon Nav. Co.* 38 Or. 343 (62 Pac. 637, 63 Pac. 763); *Mayes* v. *Stephens*, 38 Or. 512 (63 Pac. 760, 64 Pac. 319);

*Brown* v. *Baker,* 39 Or. 66 (65 Pac. 799, 66 Pac. 193); *Crown Cycle Co.* v. *Brown,* 39 Or. 285 (64 Pac. 451).

The cause of action stated in the complaint is the breach of the defendant's promise, made January 8, 1894, modified by the alleged agreement to surrender the certificates of deposit and check and to take other certificates in lieu thereof, the payment of which, it is averred, defendant orally guarantied, in case the bank failed to pay any part of them within the time limited. The guaranty averred in the complaint as originally made and subsequently modified is express, and exists in pursuance of a contract alleged to have been entered into between the parties. It would appear that the guaranty set out in the averments of new matter in the reply was to be implied from an opinion alleged to have been entertained by the defendant in respect to the solvency of the Portland Savings Bank and its ability to meet the payment of its obligations, if its creditors would not insist upon an immediate payment of their demands. The cause of action stated in the complaint being based upon an express guaranty, and that alleged as new matter in the reply being implied only, a departure is manifest, and, this being so, the court erred in failing to strike out the averments in the latter pleading of which the defendant complains.

4. The court, over defendant's objection and exception, permitted testimony to be introduced showing that he, as a member of a committee appointed by the creditors of the Portland Savings Bank at a meeting thereof held in August, 1893, recommended that time be granted to the bank to enable it to realize upon its assets, so as to pay its debts; and it is contended that an error was thus committed. The only question of fact in issue was whether the contract of guaranty was so modified by the agreement of the parties as to authorize plaintiff to surrender the certificates and check and to accept others in lieu thereof, for the payment of which defendant still continued to be liable. Under the issue involved, we are unable to see how the action of the defendant, prior to January 8, 1894, in recommending that extensions be granted by the creditors of the bank, to enable it to meet the payment of its debts, could be at

all material.   The testimony so objected to was, in our opinion, not only immaterial, but also prejudicial, and the court erred in permitting it to be received.

5. Testimony was also received, over defendant's objection and exception, tending to show that prior to January 8, 1894, he had signed a memorandum releasing the bank from its obligation of immediate payment, and agreeing to accept the money due on the original certificates of deposit and check in installments; and it is contended that such testimony was inadmissible under the issue involved.   It is alleged in the complaint that, at defendant's request and for his accommodation, plaintiff surrendered said certificates and check to the bank, etc.   If defendant, prior to January 8, 1894, signed a memorandum, whereby the payment of the debt due from the bank to him was postponed, such agreement became a part of the commercial paper assigned to plaintiff, who, if he had notice thereof, was bound thereby.   If such agreement was entered into, plaintiff's failure to secure the money from the bank, when it resumed business, was chargeable to defendant's waiving the right to demand such payment.   This question is collateral, it is true, but it is so intimately connected with the principal inquiry that we believe it was pertinent to the issue, and hence material.

It follows from these considerations that the judgment is reversed and a new trial ordered, in view of which we have deemed it proper to consider such questions as are likely to arise thereat.                                     REVERSED.

Decided 3 November, 1902.

ON MOTION FOR REHEARING.

MR. CHIEF JUSTICE MOORE delivered the opinion.

It has been made to appear by a petition for a rehearing of this cause that the following paragraph on the first page of the statement of facts upon which the opinion heretofore rendered was based, to wit: ''The bank, having secured many of the extensions desired, resumed business about April 30, 1894, when

said certificates and check could have been paid, if plaintiff had not surrendered them to the bank, taking in lieu thereof, May 19, 1894, for the remainder due thereon, eight other certificates of deposit, each for the sum of $713.71, the first payable in three months, and one of the others every three months thereafter, with interest at 6 per cent per annum''—might possibly prejudice plaintiff's rights at another trial. The clause will therefore be amended so as to read as follows, to wit: The bank, having secured many of the extensions desired, resumed business April 30, 1894, when said certificates and check were surrendered to the bank by plaintiff, who took in lieu thereof, for the remainder due thereon, eight other certificates of deposit, each for the sum of $713.71, the first payable in three months, and one of the others every three months thereafter, with interest at 6 per cent per annum. The petition will be denied.          .          Rehearing Denied.