**FIRST STATE BANK OF WINDOM et al.
v. McELWRATH et al.
(No. 2983.)**

(Court of Civil Appeals of Texas. Texarkana.
Dec. 5, 1924. Rehearing Denied Dec.
11, 1924.)

1. **Guaranty ⟐92(I)—Whether bank orally
guaranteed note transferred to plaintiff with-
out indorsement, held for jury.**

In action on vendor's lien note transferred
to plaintiff by bank, without indorsement,
whether bank orally guaranteed payment there-
of, *held* for jury.

2. **Guaranty ⟐27—Determined by particular
terms and surrounding circumstances.**

Whether a particular transaction consti-
tutes a guaranty must be determined by its
particular terms and by surrounding circum-
stances.

3. **Vendor and purchaser ⟐261(5)—One of
series of notes transferred by owner with
guaranty of payment is entitled to priority
over those retained.**

When one or more of a series of vendor's
lien notes is transferred by owner with a guar-
anty of payment, note so transferred is entitled
to priority over those retained in distribution
of proceeds of land sold under foreclosure of
lien.

4. **Frauds, statute of ⟐20—Guaranty ⟐9—
Bank's guaranty of lien note held not within
statute.**

Bank's oral guaranty of vendor's lien note
transferred to plaintiff without indorsement,
not being a promise to answer for default of
another, *held* not within statute or unenforce-
able under Uniform Negotiable Instruments
Act (Vernon's Ann. Civ. St. Supp. 1922, art.
6001–18).

Appeal from District Court, Fannin Coun-
ty; Ben H. Denton, Judge.

Action between Mrs. A. H. McElwrath and
others and the First State Bank of Windom
and others. Judgment for the former, and
the latter appeal. Affirmed.

The question on appeal involves the prior-
ity of a lien. J. B. Lyon and wife convey-
ed to J. E. Gee on November 24, 1919, a
tract of land. The consideration of the sale
was $2,700, evidenced by three notes signed
by J. E. Gee and payable to the order of J.
B. Lyon, in the sum of $900 each, due on the
1st day of December, 1920, 1921, and 1922,
respectively. The vendor's lien was express-
ly retained in the deed and notes. The First
State Bank of Windom purchased the three
notes before maturity from J. B. Lyon, who
indorsed them on the back at the time of de-
livery as follows: "J. B. Lyon." In January,
1920, the bank sold the note due December
1, 1922, to A. H. McElwrath, appellee, and
transferred the same to her by delivery only.
It was not indorsed by the bank. The bank

kept the other two notes, and they now be-
long in the assets of the bank, the doors of
the bank being closed November 14, 1921, by
the state commissioner of banking. Nothing
has been paid on any of the notes except the
year's interest.

A. H. McElwrath, the appellee, claims that
at the time the bank transferred and deliver-
ed her the note it orally guaranteed the pay-
ment, and in consequence she was entitled to
priority of lien over the existing lien for the
payment of the two notes retained by the bank.
The appellant commissioner denies any in-
dorsement or guaranty of the note by the bank,
and contends that all three notes should share
equally in the proceeds of sale of the land
under the decree of foreclosure of the ven-
dor's lien. The trial court submitted to the
jury the issue of whether or not the bank,
at the time of the sale and transfer of the
note, guaranteed its payment. The jury an-
swered the question in the affirmative, and
the court entered judgment accordingly in
favor of appellee McElwrath for the amount
of the note against the maker, and Lyon on
his indorsement, with foreclosure of the lien
on the land in priority to the lien of the
bank.

It appears from the evidence that Mrs. A.
H. McElwrath, the appellee, had $1,300 on
deposit in the bank, and wished to invest it
in vendor's lien notes, and to that end went
to the bank and made known her purpose to
the cashier. The bank had some land notes
on hand, acquired in due course of business,
and offered to sell the notes desired by her.
She bought two notes, one for $300 signed, it
appears, by Tom Ramsey, and the one in suit
signed by J. E. Gee. A check on her deposit
was given by Mrs. McElwrath to the bank for
the sum of $1,200, the purchase price of the
two notes. The bank transferred the notes to
her by delivery only. The Tom Ramsey note is
not in the suit nor involved in the litigation.
Mrs. McElwrath testified about the purchase
of the note in suit, as pertinent to the issue
involved, as follows:

"I had $1,300 in the bank and I wanted to
place it where it would bring in something, and
I went to get land notes. He (the cashier)
told me that they had one $300 note and a $900
note and that would take $1,200. He picked up
the $300 note, and said, 'This is a good fellow,
Tom Ramsey, and we will indorse this note.'
I said, 'How about the other note, is the land
not worth the money?' He said, 'Certainly, we
are behind it,' I said, 'You mean the bank.'
He said, 'Certainly.' That made me feel per-
fectly safe. I thought the Windom bank was
safe and I thought he was a reliable man and
I signed the check there for $1,200 and bought
the two notes. He said, when folding up the
notes, 'We appreciate your business and will
treat you right.' I felt perfectly satisfied when
he said the bank was behind the notes. The
notes were left with him. I did not take them
out. Mr. Gee paid the interest on the note one

⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

year, and that is the only interest I ever got. I did not know until about the time the suit was filed that the bank had not indorsed the note on the back of it. I just supposed that they had done so—and, of course, it was just like myself, I did not know any better, just felt sure that if the Windom bank was behind it that I was safe. * * * He told me the bank was behind the notes, otherwise I would not have taken them. Of course, he said that they would indorse the notes, but I didn't think it was necessary, to ask him to indorse it, just for the want of sense I reckon. I didn't have him to do it."

The cashier testified:

"I sold Mrs. McElwrath one of the three notes executed by J. E. Gee. The bank owned them. I had no particular agreement with regard to the note. I did not transfer it to her by written guarantee or other guarantee. None whatever. I considered the notes good at the time, and Mr. Lyons had also indorsed them. Both of them generally had money with us and generally met their obligations at the time. I did not insist on her taking the note, just left it to her option to take it or not. I have no recollection of making her a guaranty about the payment of the note, I think not. I gave her no written guarantee and none was asked. * * * When I bought the notes in the first instance I took into consideration Mr. Lyons, the indorser. I thought he was solvent and able to meet it. I did not consider the value of the land altogether.· I had no purpose in the world to sell Mrs. McElwrath a bad note. I thought they were good at the time. I had bought them, took them and paid full value and thought they were all right. I suppose I would have written out and have given her a written transfer or written guaranty if she had asked me to do that. I do not think that I told Mrs. McElwrath that the bank was back of that note, and that it was absolutely good and was a lien on the land and that the bank would see it paid. I have no recollection of telling her that. I would almost swear that it did not happen because I hardly made any promise. I told her I thought it was all right, which I did; but as far as promise I do not think I did. I did not dispose of the other two notes. The bank has kept them all the time, and they now belong in the assets of the bank."

H. G. Evans, of Bonham, for appellants.

Cunningham, McMahon & Lipscomb, of Bonham, for appellees.

LEVY, J. (after stating the facts as above). [1, 2] The appellant presents, in effect, the two points in view: (1) That there is a failure of evidence, as a matter of law, to show a guaranty of payment of the note by the bank; and (2) that an oral guaranty of payment of a vendor's lien note is legally unenforceable. The evidence goes to show that in the negotiation for the sale of the note in suit, and as an inducement for appellee to purchase, the bank cashier stated to appellee that the note was good and would be paid at maturity, and the land securing it was worth the notes against it, and that "the bank is behind it."

The appellee purchased the note in reliance upon the statement that "the bank is behind it." The inference from all the evidence is that the bank in reality promised to pay to appellee the amount of the note paid by appellee to the bank in the case the maker of the note did not pay same, and that the land upon which the lien rested was not worth the amount of the note. At least the court is not authorized to say, as a matter of law, that an issue of fact was not presented by the evidence for decision by the jury. Whether a particular transaction constitutes a guaranty must be determined by its particular terms and by the surrounding circumstances. As held, language like "it will be all right," and "if he is·not good, I am good," is sufficient, under pertinent circumstances, to constitute a guaranty. Birdsall v. Heacock, 32 Ohio St. 177, 30 Am. Rep. 572; Crenshaw·v. Jackson, 6 Ga. 509, 50 Am. Dec. 361.

[3, 4] It seems to be well settled that when one or more of a series of vendor's lien notes is transferred by the owner with a guaranty of payment, the note so transferred is entitled to priority over those retained in the distribution of the proceeds of the land sold under foreclosure of the lien. Perry v. Dowdell, 38 Tex. Civ. App. 96, 84 S. W. 833; Anderson v. Perry, 98 Tex. 493, 85 S. W. 1138; Martin v. Gray (Tex. Civ. App.) 159 S. W. 118; and other cases. That is in effect all the court did, as shown by the judgment, in the present appeal, to accord the appellee priority in right to participate in the proceeds of the sale of land upon which the lien of the notes rested. Is the guaranty required to be in writing in order to be legally enforceable? No legal reason why the guaranty should be in writing in order to make it enforceable is apparent. If an oral guaranty is made of payment of a vendor's lien note, transferred for a valuable consideration by delivery only, the promise is not within the statute of frauds. Lee & Co. v. Stowe & Wilmerding, 57 Tex. 444; Kiernan v. Kratz, 42 Or. 474, 69 P. 1027, 70 P. 506; Bank v. Moers, 19 App. Div. 155, 45 N. Y. S. 997; Robinson v. Baskins, 53 Ark. 330, 14 S. W. 93, 22 Am. St. Rep. 202. For the guaranty of payment is regarded as the promise of the transferor to pay for the consideration had to him from the transferee, if the maker of the note does not pay, and not a promise to answer for the default of another. 2 Daniel on Negotiable Instruments (5th Ed.) § 1763; 3 R. C. L. p. 1160, § 378; Tiedeman on Commercial Paper, § 418.

Quoting from Daniel on Neg. Inst., supra:

"When a third person gets credit or forbearance upon the guaranty of another, even when it is contemporaneous, the latter's promise is clearly a promise to answer for his debt. But there are cases in which a guaranty is really to answer for one's own debt, though having the appearance of a promise to answer

for another's, and in such case it is not within the statute of frauds. Thus where a third person's note was transferred with mere verbal warranty that it 'was good and collectible' in part payment of a horse, it was held valid, because in reality a promise to pay the amount, unless the third person paid it for him. This doctrine is uniformly adopted in the United States where the guaranty is upon a pre-existing consideration, as well as where it is for a debt contracted, goods sold, or obligations exchanged, at the time the guaranty is made. Where one who sells a note guarantees its payment, the guaranty is an original undertaking, and need not be written."

And the Uniform Negotiable Instruments Act (Vernon's Ann. Civ. St. Supp. 1922, art. 6001–18), declaring that no person shall be liable on a negotiable instrument whose signature does not appear thereon, has no application to a suit on a guaranty of payment of a vendor's lien note transferred for a valuable consideration by delivery only. Swenson v. Stoltz, 36 Wash. 438, 78 P. 999, 2 Ann. Cas. 504. Quoting from this last case:

"The liability sought to be enforced neither arises out of the instrument, nor is it based thereon. This note made by third parties is merely an incidental and collateral matter to the agreement sued upon, * * * which is in effect an agreement to make good to respondents that from which they parted, and which they turned over to the party here sought to be charged. * * * The [Uniform Negotiable Instruments] Statute was not intended to change the rule, * * * where the obligation is the absolute one of the guarantor, and is not a liability on the instrument itself."

We conclude that the judgment should be affirmed, and it is accordingly so ordered.