Argued December 22, 1926, affirmed January 25, rehearing denied March 8, 1927.

# THE UMPQUA VALLEY BANK v. H. L. WILSON.

(252 Pac. 563.)

**Frauds, Statute of—Oral Agreement of Large Stockholder to Pay Corporation's Notes Held "Original Promise," not Within Statute —"Promise to Answer for Debt" (Or. L., § 808, subd. 2).**

1. Oral agreement of stockholder to pay notes of insolvent corporation, made as part of transaction whereby corporation's principal creditor, a partnership, agreed to cancel its debt and pay all other debts of corporation in consideration of transfer of all of corporation's assets, *held* original promise making the corporation's debt his own, and not a promise to answer for the debt of the corporation, within Section 808, subdivision 2, Or. L.

**Contracts—Bank, Holder of Corporation's Notes, Held Entitled to Sue on Stockholder's Agreement With Another to Pay Such Notes, Agreement Being Made in Part for Its Benefit.**

2. Bank, holder of notes of corporation which stockholder agreed to pay as part of transaction whereby principal creditor of corporation canceled its own debt and assumed other debts of corporation in consideration of transfer of corporation's assets, *held* entitled to sue holder on such agreement, it having been made in part for bank's benefit.

**Appeal and Error—Trial Court's Finding That Option to Repurchase was Part of Transaction Between Corporation and Creditor Held Conclusive.**

3. Trial court's finding, supported by testimony, that option to repurchase was part of transaction whereby corporate assets were conveyed to corporation's principal creditor, *held* conclusive.

**Contracts—Stockholder's Promise to Corporation's Principal Creditor to Pay Notes Held by Another Creditor Held Supported by Sufficient Consideration.**

4. Where principal creditor of corporation receiving conveyance of all of its assets gave option to repurchase such assets to managing stockholder, who promised to pay notes of corporation held by bank, *held* such promise was supported by consideration and sufficient to support action by bank.

**Frauds, Statute of—Stockholder's Promise to Pay Corporation's Debt is not Within Statute of Frauds, Where Corporation is Discharged or Where Stockholder Seeks to Subserve Some Interest of His Own—"Promise to Answer for Debt" (Or. L., § 808).**

5. Generally, stockholder's promise to pay corporation's debts is a promise to answer for the debt of another, though such rule is qualified in cases where the corporation is discharged of the

---

1. Stockholder's oral promise to pay debt of corporation as within statute, see notes in **Ann. Cas.** 1912B, 222; **Ann. Cas.** 1913D, 851; **Ann. Cas.** 1917D, 354. See, also, 25 R. C. L. 509, 510.

5. See 25 R. C. L. 510.

debt or where the stockholder makes his promise for the pur-
pose of subserving some direct pecuniary interest or business purpose
of his own, in which cases promise is not within statute of frauds,
Section 808, Or. L.

Contracts, 13 **C. J.**, p. 707, n. 10.
Frauds, Statute of, 27 **C. J.**, p. 132, n. 14, p. 147, n. 99, p. 168,
n. 70.

From Douglas: C. M. THOMAS, Judge.

Department 2.

This is an action by the Umpqua Valley Bank
against H. L. Wilson to recover the sum of $3,793.05,
with interest. The cause was tried to the court with-
out the intervention of a jury. Findings of fact and
conclusions of law were made and a judgment entered
in favor of plaintiff. Defendant appeals.

The action is founded upon an oral promise of the
defendant H. L. Wilson to pay a series of promissory
notes executed by Fir-Pine Lumber Company, a cor-
poration, to the plaintiff, the Umpqua Valley Bank.
Each note was guaranteed by F. F. Williams. The
first note was for $2,000, dated March 29, 1918; the
second note was for $2,000, dated April 19, 1918; the
third note was for $1,000, dated May 6, 1918;
the fourth note was for $3,000, dated October 16,
1918.

On January 16, 1922, acting under his agreement
with Lystul and Lawson, defendant paid to the bank
the sum of $2,007.11 on account of the Fir-Pine Lum-
ber Company's note.

It is developed by the pleadings and evidence sub-
stantially as follows:

On January 1, 1922, the Fir-Pine Lumber Com-
pany, a corporation, was indebted to the plaintiff
bank in the sum of $5,536.48 and to J. O. Lystul and
Thomas E. Lawson, partners doing business as Ly-
stul and Lawson Lumber Company, about the sum of

$22,000. It was further indebted to Topaz Land Company an amount secured by mortgage on a large part of the Fir-Pine Lumber Company's real property, the exact amount not being given. And in addition to the above amounts the Fir-Pine Lumber Company was also indebted in small amounts to other persons. The Fir-Pine Lumber Company was insolvent.

About January 11, 1922, defendant H. L. Wilson was a stockholder and officer of the Fir-Pine Lumber Company and made an agreement with Lystul and Lawson whereby he would cause the Fir-Pine Lumber Company to sell and convey to Lystul and Lawson all of its property, real and personal, excepting outstanding accounts, notes and bills receivable, in consideration of Lystul and Lawson canceling and satisfying all indebtedness of Fir-Pine Lumber Company to them, and in addition thereto Lystul and Lawson agreed to assume and pay certain obligations of Fir-Pine Lumber Company. The transfer of the Fir-Pine Lumber Company's property to Lystul and Lawson was to be made subject to a mortgage in favor of Topaz Land Company, which they assumed. In consideration of the transfer and the satisfaction of the most of the indebtedness of the Fir-Pine Lumber Company by Lystul and Lawson, the defendant agreed to and with Lystul and Lawson that he would personally pay the indebtedness of Fir-Pine Lumber Company to the plaintiff bank, in order to prevent plaintiff from proceeding against Fir-Pine Lumber Company for the collection of its indebtedness, and to further prevent it from filing a petition in bankruptcy against the Fir-Pine Lumber Company, on account of the preference given Lystul and Lawson over plaintiff in transferring all of its property to

Lystul and Lawson. As a further consideration for the transfer, Lystul and Lawson agreed to give the defendant an option to individually purchase all of the property transferred to Lystul and Lawson by the Fir-Pine Lumber Company for a price equal in amount to Lystul and Lawson's claim against the Fir-Pine Lumber Company plus the indebtedness assumed and agreed to be paid by Lystul and Lawson, such option to expire on the first day of February, 1923; that the defendant partly carried into effect his agreement with Lystul and Lawson by causing the Fir-Pine Lumber Company to convey all of its real and personal property to Lystul and Lawson, except accounts, notes and bills receivable, but subject to the mortgage to the Topaz Land Company, the deed of conveyance being delivered and recorded some time during the month of February, 1922.

It also appears that defendant Wilson, in further carrying out his agreement with Lystul and Lawson, notified the plaintiff bank of the agreement made with them and on January 16, 1922, paid the bank $2,007.11, the amount of the principal and interest due on the first note described, and agreed to pay the remainder of the indebtedness within six months from that date; that Lystul and Lawson fully performed their part of the agreement; satisfied their indebtedness against the Fir-Pine Lumber Company; paid other obligations of that company, and gave the defendant Wilson individually a written option on the property transferred to them; that the notes, accounts and bills receivable, retained by the Fir-Pine Lumber Company, were not of sufficient value to pay the indebtedness of the Fir-Pine Lumber Company to the plaintiff bank and the act of transferring all of its property to Lystul and Lawson constituted a preference and act of

bankruptcy; but the plaintiff was prevented from filing any petition in bankruptcy or taking any steps to defeat said preference, by reason of its reliance upon the agreement made between Lystul and Lawson and the defendant wherein defendant assumed and agreed to pay the indebtedness of the Fir-Pine Lumber Company to the plaintiff, and upon the further reliance on the part performance of the agreement by the defendant; that the defendant has failed to pay the remaining indebtedness to plaintiff in accordance with his agreement.

The trial court made findings of fact in substance as above stated. The defendant filed exceptions to each of the findings of fact and conclusions of law made by the trial court and offered findings of fact and conclusions of law in his favor which the court declined to sign.

It appears that prior to the time of the transfer of the property to Lystul and Lawson and the agreement of defendant to pay the notes of the Fir-Pine Lumber Company to the plaintiff bank, the management of the Fir-Pine Lumber Company had been almost exclusively in the hands of F. F. Williams, its president. About December 22, 1921, F. F. Williams met with an accident causing his death. Thereafter the defendant, who was a stockholder and had been an officer in the company, took charge of its affairs and discovered that the corporation had been dissolved for nonpayment of its state license fee and was in fact insolvent. He thereupon opened negotiations with Lystul and Lawson for the sale and transfer to them of all the corporate property of the company and an agreement was reached by which Lystul and Lawson agreed to take over all of the corporate property of the Fir-Pine Lumber Company, subject to the

mortgage of Topaz Land Company on the real property which they assumed. They agreed to satisfy their indebtedness of about $22,000 against the company, to pay the amount of its indebtedness of $1,600 to the Glendale State Bank, and certain other small claims, and gave the defendant Wilson an option to run for a period of one year for the purchase by Wilson of said corporate properties so taken over by them for an amount equal to the indebtedness of the Fir-Pine Lumber Company assumed and paid by them. It was known at the time of these negotiations by Lystul and Lawson and Wilson that the Fir-Pine Lumber Company was indebted to the plaintiff bank for the amount of such indebtedness and Wilson, in consideration of Lystul and Lawson taking over the property of the corporation and paying and assuming all of its debts, excepting that to the plaintiff bank, and giving him the option referred to above, agreed with Lystul and Lawson to pay the amount to the bank, Lystul and Lawson refusing to enter into such a contract until the bank's indebtedness was provided for, knowing they would be responsible therefor unless provision was made for taking care of it.

The agreement between Wilson and Lystul and Lawson was fully executed, Wilson procured the reinstatement of his corporation and caused it to transfer all of its property to Lystul and Lawson in pursuance of the foregoing agreement. Lystul and Lawson satisfied the indebtedness of the Fir-Pine Lumber Company to them and to the Glendale State Bank, and the other small claims they agreed to assume, and executed and delivered to Williams the option agreed upon. At the time the negotiations were being carried on between the defendant Wilson and

120 Or.—26

Lystul and Lawson, the defendant, with Mr. Lystul went to the plaintiff bank and told its officers of the agreement they had made which was satisfactory to the bank. Relying thereon the plaintiff bank took no steps to prevent the deal being consummated and did not attempt to recover the amount due it from the property taken over by Lystul and Lawson.

Plaintiff brings this action to recover the balance of the amount from the defendant on the strength of his contract with Lystul and Lawson, the agreement between the defendant Lystul and Lawson being partly for the benefit of this plaintiff.

AFFIRMED.     REHEARING DENIED.

For appellant there was a brief over the name of *Mr. J. O. Watson,* with an oral argument by *Mr. A. C. Hough.*

For respondent there was a brief over the name of *Messrs. Rice & Orcutt,* with an oral argument by *Mr. Dexter Rice.*

BEAN, J.—The principal errors assigned by defendant are that the court erred in overruling defendant's motion for judgment on the pleadings; that it erred in making the several findings of fact; and that the court also erred in permitting plaintiff to introduce any testimony at the trial of the cause which had to do with any oral promise alleged to have been made by plaintiff H. L. Wilson to J. O. Lystul, Thomas A. Lawson or to the plaintiff.

1. The question in this case is whether or not the promise made by the plaintiff to Lystul and Lawson to pay the plaintiff bank is within the statute of frauds. Defendant contends that the promise made by him to pay the note of the Fir-Pine Lumber Company was merely an agreement to answer for the

debt of the Fir-Pine Lumber Company and not in writing expressing the consideration nor signed by defendant therefore within the statute of frauds under the provisions of Section 808, subdivision 2, Or. L.

The defendant Wilson owned stock in the Fir-Pine Lumber Company of the par value of $20,000. His brother-in-law, F. F. Williams, prior to his death owned most of the remaining shares of stock. The corporation was insolvent and bankruptcy was proposed. Wilson desired to obviate this. He therefore entered into an agreement wherein defendant agreed with Lystul and Lawson to cause all of the property of Fir-Pine Lumber Company to be conveyed to Lystul and Lawson and to personally pay the indebtedness of Fir-Pine Lumber Company to plaintiff, in consideration of Lystul and Lawson canceling all their indebtedness against Fir-Pine Lumber Company and assuming and paying the indebtedness of Fir-Pine Lumber Company to Glendale State Bank, and its other incidental indebtedness, and the further consideration of Lystul and Lawson, giving and granting to defendant Wilson individually an option for one year to purchase from Lystul and Lawson all of said corporate properties for an amount equal to the indebtness assumed and paid by Lystul and Lawson.

2. This agreement of defendant Wilson made with Lystul and Lawson for a consideration or benefit to him, to assume and pay the notes to the bank, and relieve the property of the corporation, thereby fulfilling a duty resting upon Lystul and Lawson, constituted an original promise on the part of Wilson, and made the debt his own, and was not within the statute of frauds. The agreement being partly for the benefit of plaintiff, it can maintain an action thereon: *Feldman* v. *McGuire,* 34 Or. 309, 312, 314

(55 Pac. 872); *Kiernan* v. *Kratz*, 42 Or. 474, 478 (69 Pac. 1027, 70 Pac. 506); *Miles* v. *Bowers*, 49 Or. 429, 434 (90 Pac. 905); *Baker City M. Co.* v. *Idaho C. Co.*, 67 Or. 372, 377 (136 Pac. 23); *Riddle St. Bank* v. *Link*, 78 Or. 498, 502 (153 Pac. 1192); *Phez Co.* v. *Salem Fruit Union*, 103 Or. 514, 531 (201 Pac. 222, 205 Pac. 970); *The Home* v. *Selling*, 91 Or. 428, 435 (179 Pac. 261); *Seaver* v. *Ransom*, 224 N. Y. 233 (120 N. E. 639, 640, 2 A. L. R. 1189); Am. & Eng. Ann. Cas. 1913D, note, p. 851; Am. & Eng. Ann. Cas. 1912B, note, page 222.

In *Hurst Hardware Co.* v. *Goodman*, Ann. Cas. 1912B, 218 (68 W. Va. 462, 69 S. E. 898, 32 L. R. A. (N. S.) 598), the syllabus reads thus:

"If the main purpose of an oral promise by one person to pay a sum of money for which another is liable or may become liable is to secure a direct, personal and pecuniary benefit to the promisor, the promise is original and not within the statute of frauds, though such third person remains liable for the debt."

In a note to the latter case, at page 222, we read as follows:

"In *Yracheta* v. *Stanford*, 120 N. Y. Supp. 117, the court said that a stockholder's oral promise to pay a debt of the corporation is not within the statute of frauds provided it is founded on a new consideration moving to the promisor, as for example a valid agreement of forbearance."

In Ann. Cas. 1913D, at page 851, a note reads thus:

"The distinction between original and collateral agreements should, of course, be borne in mind. It is only the latter that are within the statute. This distinction was pointed out in the recent case of *Beall* v. *Board of Trade*, 164 Mo. App. 186 (148 S. W. 386), wherein it appeared that a debt was originally that

of a corporation of which the plaintiff was the president and a stockholder, and the creditor agreed to release the corporation from the whole debt on the payment of thirty per cent of it, if the plaintiff, individually, would assume the remaining seventy per cent.    This was done, and it was held that the balance of the total sum thereby became the plaintiff's obligation, and his promise was therefore a promise to pay his own debt.''

In 27 C. J., Section 31, pages 147 and 148, we read as follows:

''Perhaps the most accurate statement of the rule which can be made is as follows: Where the primary debt subsists and was antecedently contracted, the promise to pay it is original when it is founded on a new consideration moving to the promisor and beneficial to him, and such that the promisor thereby comes under an independent duty of payment irrespective of the liability of the principal debtor.    The rule in this form has met with practically universal acceptance. [Citing a long list of authorities.] * * Accordingly the true test is not the presence or nature of a consideration, but whether or not the promise is such that the promisor became, within the intention of the parties, a principal debtor primarily liable.''

The defendant was interested in the Fir-Pine Lumber Company and had stock therein of the par value of $20,000.    He was engaged in merchandising.    It was to his interest and he desired to prevent the Fir-Pine Lumber Company being declared bankrupt. The deal made by him with Lystul and Lawson was to his advantage.    As a part of the transaction Lystul and Lawson gave the defendant an option to purchase the property for a certain amount at any time within one year.    This gave the defendant the benefit of any improvement in the market for the property that the Fir-Pine Lumber Company was selling to

Lystul and Lawson. If during that time business conditions had been such that the value of the property had largely increased or doubled, Wilson would have had an opportunity to save a portion of the money he had invested in the lumber company. It was no doubt beneficial to him, in a business way, to obviate the corporation in which he was interested, being adjudged bankrupt. The fact that business conditions were such during the life of the option that the value of the property did not increase sufficiently for him to exercise his option would not change the legal aspect of the transaction. The defendant in making this agreement was bound to comply therewith and pay the bank, just as firmly as he would have been if he had purchased all of the corporate property and agreed to pay this indebtedness to the bank. See 20 Cyc. 174.

3. It is argued in behalf of defendant that the option was executed a month or two after the transfer of the property and was not a part of the same transaction. The trial court found that the option was a part of the agreement. The testimony supports the finding, therefore, that question is settled.

4. In the brief of defendant it is stated that the complaint does not state any agreement between the respondent bank and the appellant Wilson, based upon any consideration. This action is founded upon the agreement between Lystul and Lawson on the one part, and the defendant Wilson on the other. This agreement was fully executed on the part of Lystul and Lawson and also on the part of defendant Wilson, except for part payment of the debt due the plaintiff. See *McLeod* v. *Despain,* 49 Or. 536, 563 (90 Pac. 492, 92 Pac. 1088, 124 Am. St. Rep. 1066, 19

L. R. A. (N. S.) 276), and *McDaniels* v. *Harrington,* 80 Or. 628, 631 (157 Pac. 1068).

Whenever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving a benefit to himself, his promise is not within the statute, although it may be in form a promise to pay the debt of another and its performance incidently may have that effect. And when there is a benefit to the promisor or to a third party at his instance, it is a good consideration upon which to maintain an action: *Emerson* v. *Slater,* 63 U. S. 28 (16 L. Ed. 360); *Davis* v. *Patrick,* 141 U. S. 479; (35 L. Ed. 826, 12 Sup. Ct. Rep. 58); *Ludwick* v. *Watson,* 3 Or. 256, 258.

5. As a general rule, a stockholder not being liable for the corporation debts, his promise to pay such a debt is in the strict sense a promise to answer for the debt of another, but there is a well-established qualification of this general rule, as in cases where the corporation is discharged of the debt or where the stockholder made his promise to pay such corporate debt for the purpose of subserving some direct pecuniary interest and business purpose of his own. In all such cases his promise is not within the statute: 25 R. C. L., § 94, p. 510.

When defendant's corporation, Fir-Pine Company, transferred all its corporate property to Lystul and Lawson, leaving nothing to pay plaintiff's claim, this was not a transfer in the ordinary course of business and Lystul and Lawson took the property subject to an equitable lien in favor of plaintiff and made the property a trust fund for the benefit of the creditors. This imposed a duty and obligation from the promisees Lystul and Lawson, to the plaintiff, and brings the case within the rule laid down by the authorities

cited. See, also, *Williams* v. *Commercial Nat. Bank,* 49 Or. 492, 498 (90 Pac. 1012, 91 Pac. 443, 11 L. R. A. (N. S.) 857).

The finding of facts made by the trial court are supported by the evidence. The conclusions of law are correct and the judgment is affirmed.

AFFIRMED. REHEARING DENIED.

BROWN, BELT and RAND, JJ., concur.