FIRST NAT. BANK OF O'DONNELL et al. v.
CITIZENS' NAT. BANK OF LUBBOCK.

· No. 3599.

Court of Civil Appeals of Texas. Amarillo.
April 22, 1931.

Rehearing Denied May 20, 1931.

Carl Rountree and R. Dyrel Kirk, both of
Lamesa, for appellants.

Bean & Klett, of Lubbock, for appellee.

RANDOLPH, J.

This suit was filed by the appellee against
the appellant and one M. C. Hamilton on a
promise made by appellant to pay a check of
the defendant Hamilton drawn on defendant
bank. On trial, it appearing that Hamilton
had received his discharge in bankruptcy,
judgment was rendered discharging him, and
judgment was also then rendered in favor
of the plaintiff and against the defendant
bank. From this judgment, appeal is had to
this court.

The defendant filed its plea of privilege to
be sued in the county of its domicile, and in
reply the plaintiff filed its controverting affi-
davit. At the request of the plaintiff the plea
of privilege was postponed and tried with the
main case on its merits. On hearing the plea
of privilege was overruled, and this action of
the trial court is also assigned as error on this
appeal.

The plaintiff's petition, leaving out the
formal parts, alleges substantially that Ham-
ilton presented to the plaintiff at its banking
house in Lubbock a check or draft of date
August 21, 1929, for the sum of $275, signed
by the defendant Hamilton and drawn on the
First National Bank of O'Donnell, Tex., and
payable to the order of the plaintiff and re-
questing that the plaintiff cash said instru-
ment and pay the said Hamilton the money
thereon according to the face thereof; that
the said Hamilton was not a customer of
plaintiff and did not have any funds in plain-
tiff's bank to his credit, and that plaintiff
was unwilling and refused to cash said draft
or pay said Hamilton in advance; that Ham-
ilton stated and represented to plaintiff that
he had the money in the defendant bank to pay
said check or draft, and that same would be
honored by the defendant First National
Bank of O'Donnell on presentment and would
be paid by said defendant bank; that there-
upon the plaintiff called the defendant First
National Bank of O'Donnell by telephone and
informed defendant that said check or draft
had been presented by Hamilton, and that he
had requested plaintiff to advance the amount
thereof and had represented to plaintiff that
said check would be honored and paid by de-
fendant bank; that the plaintiff asked said
defendant bank whether it would pay said
check when presented, if cashed by the plain-
tiff, and the defendant bank then and there
represented that it would, and then and there
bound and obligated itself by such promise
to honor said check or draft upon present-
ment and pay same. That thereupon the
plaintiff, purely as an accommodation to the
defendants, and without any consideration
whatever moving to the plaintiff, then and
there cashed said check and paid the sum of
$275 to the said Hamilton upon the represen-
tations and promises of the said defendant
bank; that the plaintiff would not have paid
said sum of money except for such represen-
tations, promises, and agreement on the part
of the said defendant bank; that thereby
the plaintiff acquired and became the holder
of said instrument in due course of trade for
a valuable consideration, and immediately
caused same to be sent to the defendant bank
and presented for payment and then to the de- ·
fendant Hamilton when payment was also
demanded of him, which payment was re-
fused by both defendants.

As an alternative plea, the plaintiff adopts
the foregoing allegations of fact in a plea of
fraud whereby defendant caused it to be de-
ceived, etc., and upon which it relied and
paid out the money to Hamilton.

Defendant bank filed its plea of privilege
to be sued in Lynn county, the county of its
domicile and residence. This plea of privi-
lege, in connection, with the controverting

affidavit, was heard with the case on its merits. Defendant bank also filed its answer, consisting of general exceptions, special exception, general denial, and special denial, setting up defendant's claim as to the occurrences wherein the plaintiff bank telephoned the defendant bank.

The case was submitted to a jury upon special issues, and by their answers' the jury found: (1) That W. S. Cathey (assistant cashier of defendant bank) unconditionally promised the Citizens' National Bank to pay the draft in question; (2) that at the time such promise was made the First National Bank of O'Donnell did not intend to pay such draft in the event the draft on Colorado City was not paid, (3) the Citizens' National Bank did not know before it paid the $275 to Hamilton on the draft that the draft would not be paid by defendant unless the draft on the Colorado City was paid.

The plaintiff's witness Hardwick, its cashier, testified substantially as follows: That he was assistant cashier of the plaintiff bank on or about August 21, 1929. It was a part of his duties to look after the payment and collection of items coming into the bank. On or about that day a man named M. C. Hamilton came into the bank for the purpose of having the bank cash a $275 check drawn on the First National Bank of O'Donnell. The instrument handed him is the one Hamilton presented. Hamilton said he wanted to cash a check for $275. He had not drawn the draft, it was then drawn in the bank, the witness writing the draft and Hamilton signing it. Hamilton said he had the money there (the defendant bank) and for the witness to call the defendant bank and see if it was good. Hamilton was not a customer of plaintiff bank and did not carry on deposit any money in that bank. The witness did not pay out the money to Hamilton, but refused to pay it out until he telephoned the defendant bank. As soon as the draft was made out, Hardwick talked to W. S. Cathey of the defendant bank. In that conversation the witness Hardwick testifies he related to Cathey the fact that Hamilton had a check for this amount drawn on the defendant bank that he wanted witness to advance him the cash on. Witness told Cathey that Hamilton was in there and wanted to cash a check for $275 and asked him if the check was good. Cathey said, "Wait a minute," and came back and said Mr. Hamilton had a check out for collection and then witness asked him the direct question, "Will you pay this check?" because it was nothing to witness to cash Hamilton's check, and, knowing him like he did, he would not have cashed it at all unless he felt certain the check was all right and he asked the direct question: "Will you pay this check for $275.-00?" And Cathey said he would; he, how-

ever, told the witness that Mr. Hamilton had out a collection, but witness testifies he would not have paid it on the strength of that because witness wanted to know if the money was there before he gave Hamilton $275. He believed Cathey's statement that he made the witness. Witness did not understand that Cathey told him that he would pay the check if he made the collection for Hamilton, and no such statement was made. Cathey did not in any way indicate to witness that the collection he had for Hamilton was not good or might be doubtful, or that the payment of his check would be conditioned on the collection of Hamilton's check that the defendant bank had for collection.

Cathey, the assistant cashier of the defendant bank, testified:

"I remember the conversation with Mr. Hardwick relative to this check or draft. I talked to someone on that occasion from the Citizens National Bank, but I did not know at that time that it was Mr. Hardwick. They asked me whether or not my bank would pay this draft. We held quite a little conversation right there and I told him, 'Knowing Mr. Hamilton as I did,' that is what Mr. Hardwick said about knowing him as he did, 'Knowing Mr. Hamilton as I did I told Mr. Hardwick that Mr. Hamilton had a collection item out that I felt reasonably sure would be paid as they had always been paid'. 'In the course of a few months time he had had four or five drafts drawn on the Colorado City Bank and to that date none had been turned down, they had all been paid, but he did not have any money on deposit and I felt reasonably sure his draft would be paid, but he didn't have the money to pay it with on deposit.' He did not have any money on deposit then.

"I think Mr. Hamilton's financial condition at that time was rather hard and it was my interpretation that he was heavily involved. I believe he owed our bank at that time. I understood that he later filed a petition in bankruptcy.

"I did not tell Mr. Hardwick that we would pay this check or draft when it came in to our bank. I told him I thought it would be paid, that he had a draft out for three hundred dollars. I might not have stated the amount, but I think I did because I had just handled it 'a day or two prior to that to Colorado City and I felt like it would be paid. I think I told him that whether or not we would pay this draft would depend on whether that draft was paid, because that was the only way we could have paid it. I told him I felt sure the draft to Colorado City would be paid. I felt like the draft he had out for collection would be paid as they had prior to that. I do not recall exactly whether I said that if it was paid that I would pay this

check, but I presume so because that is the only way I had of paying it. If this draft had been paid I am sure I would have paid this check or draft. I did not have any intention of conveying the idea to Mr. Hardwick that we would pay this draft unconditionally whether the money was on deposit or not.

"This draft was later presented to our bank. and payment was refused because of no funds."

The defendant bank, appellant here, bases its appeal upon two propositions: First, because the trial court erred in overruling defendant's general demurrer and third special exception to the plaintiff's petition, for the reason that said petition failed to allege that defendant, appellant, ever promised in writing to pay the check declared upon; second, that the court erred in overruling defendant's plea of privilege, because the testimony of plaintiff's cashier conclusively showed that plaintiff relied solely and alone upon the oral promises of defendant's assistant cashier to pay the check in question, which is an insufficient showing for the reason that the defendant bank could not be held liable until it had accepted the check in writing.

From these propositions it is clear that the only question for our decision is: Did the fact that the promise by the defendant bank to pay the check was an oral promise to pay defeat plaintiff's cause of action?

The plaintiff insists that the promise, being an independent promise to pay the $275 and one not arising out of the instrument nor based thereon, does not come within the provisions of the Negotiable Instruments Act that "no person shall be liable on a negotiable instrument whose signature does not appear thereon" (Rev. St. 1925, art. 5932, § 18), does not apply to plaintiff's cause of action, and that for the same reason the statute of frauds (Rev. St. 1925, art. 3995, par. 2) does not apply.

The following cases are cited and quoted from upon the proposition that the promise was not required to be in writing under the statute of frauds or under the Negotiable Instruments Act.

In the case of First State Bank of Windom v. McElwrath et al. (Tex. Civ. App.) 266 S. W. 837, 838, Justice Levy, speaking for the Texarkana court and discussing the question as to whether an oral guaranty of a vendor's lien note is legally enforceable where the party purchasing the note did so in reliance on the cashier's statement that "the bank is behind it," holds that the bank in reality promised to pay the amount of the note in case the maker of the note did not pay same. In that case Judge Levy says: "No legal reason why the guaranty should be in writing in order to make it enforceable is apparent. If an oral guaranty is made of payment of a vendor's lien note, transferred for a valuable consideration by delivery only, the promise is not within the statute of frauds."

He also quotes from Dan. on Neg. Inst. (5th Ed.) § 1763, as follows: "When a third person gets credit or forbearance upon the guaranty of another, even when it is contemporaneous, the latter's promise is clearly a promise to answer for his debt. But there are cases in which a guaranty is really to answer for one's own debt, though having the appearance of a promise to answer for another's and in such case it is not within the statute of frauds. Thus where a third person's note was transferred with mere verbal warranty that it 'was good and collectible' in part payment of a horse, it was held valid, because in reality a promise to pay the amount, unless the third person paid it for him. This doctrine is uniformly adopted in the United States where the guaranty is upon a pre-existing consideration, as well as where it is for a debt contracted, goods sold, or obligations exchanged, at the time the guaranty is made. Where one who sells a note guarantees its payment, the guaranty is an original undertaking, and need not be written."

He ruled that the Negotiable Instruments Act, declaring that no person shall be liable on a negotiable instrument whose signature does not appear thereon, has no application to a suit on a guaranty of payment of a vendor's lien note transferred by delivery only, and, to sustain this, Judge Levy quotes from Swenson v. Stoltz, 36 Wash. 318, 78 P. 999, 2 Ann. Cas. 504, as follows: "The liability sought to be enforced neither arises out of the instrument, nor is it based thereon. This note made by third parties is merely an incidental and collateral matter to the agreement sued upon, * * * which is in effect an agreement to make good to respondents that from which they parted, and which they turned over to the party here sought to be charged. * * * The (Uniform Negotiable Instruments) Statute was not intended to change the rule, * * * where the obligation is the absolute one of the guarantor, and is not a liability on the instrument itself."

The Austin Court of Civil Appeals lays down the rule that, where there is an original promise to pay or perform some obligation, it does not come under the terms of the Negotiable Instruments Act, and, quoting from 27 C. J. 135, recognizes the further rule laid down there that: "The test is whether the promise was in fact made and intended as collateral or original, and determining this question regard must be had to the situation of the party, and all the circumstances of each case."

In the case at bar, as stated above, the jury has found, and this finding is sup-

ported by the evidence, that the defendant bank unconditionally promised to pay the draft in question to the plaintiff, and this finding is binding on us.

We therefore hold that the promise of the defendant bank to pay plaintiff bank was an original and independent promise to pay such sum, and that it does not come under the provisions of the Negotiable Instruments Act, neither does it come under the provisions of the statute of frauds, and therefore need not be in writing to be enforceable.

Supporting these propositions we cite, also, Hubb Diggs Co. v. Ft. Worth State Bank, 117 Tex. 107, 298 S. W. 419; Evans v. Shaw (Tex. Civ. App.) 268 S. W. 1037; Gonzales v. Garcia (Tex. Civ. App.) 179 S. W. 932; Roach, Stansell & Crane v. Timpson (Tex. Civ. App.) 170 S. W. 863, 864; Carlisle v. Frost-Llewellyn (Tex. Civ. App.) 196 S. W. 733, 735.

We place especial stress on the decision in Hubb Diggs Co. v. Ft. Worth State Bank, supra, and the approval by the Supreme Court of the Windom-McElwrath Case, supra.

The sole question presented to us that the court erred in overruling the plea of privilege is based on the ground and only the ground that the promise sued on was not in writing. What we have said above disposes of that question, and we sustain the court's overruling the plea of privilege.

We affirm the judgment of the trial court.