## DANIEL HUNTER *vs.* ELBRIDGE RANDALL.

*Statute of Frauds as a defence to an action for money had and received.*

Where the gist of an action for money had and received consists in oral representations falsely and fraudulently made by the defendant, concerning the financial character and credit of another, to the injury of the plaintiff, the statute of frauds may be invoked as a defence thereto.

ON EXCEPTIONS.

The plaintiff was a farmer with considerable money at interest, and the defendant, who was also accustomed to let out quite large sums of money, was professedly a friend of Mr. Hunter, in whom Hunter placed great confidence in regard to the investment of his surplus funds. Ezekiel Oliver, who, for several years prior to the transactions out of which the present litigation originated, had borrowed frequently of Randall, at high rates of interest, and was largely indebted to Randall and others, beyond his ability to pay, in 1868, built a mill upon leased land, at Parker's Head. At the time he first thought of building, he was unacquainted with Daniel Hunter; but in June of that year the defendant introduced these

gentlemen, carrying Oliver to Mr. Hunter's house, and recommending him, (Oliver) as the plaintiff and his witnesses testified, as a very honest man, deacon of the church, and abundantly able to meet all of his liabilities. By these means he then procured a loan of $500 for Oliver, and by similar representations, upon several other occasions afterwards, Hunter was induced to lend Oliver other sums, amounting in the aggregate to about three thousand dollars. All of these loans, part of which were in notes and bonds that could be, and were, turned into money, passed from Hunter, through Randall's hands, into Oliver's, and were, in part, subsequently applied upon Mr. Oliver's indebtedness to Mr. Randall. The only security Mr. Hunter had was a mortgage upon the mill built with part of his money, which his witnesses swore was utterly worthless as a mill, and that it would cost all the timber was worth to move it away. There was some testimony relative to statements made by Randall to Hunter as to the value of the mill, and of other property, which he said Oliver owned at Parker's Head; affirming that the mill was a good investment, sufficient security, &c. He charged Oliver for his services in procuring these loans of Mr. Hunter. The plaintiff had fallen into intemperate habits to an extent that impaired his capacity to look carefully after his property and investments.

Upon these facts the plaintiff based this action for money had and received.

In the course of his charge the judge said: "So, in this case, if this defendant has wrongfully or fraudulently induced this plaintiff to loan this money, and obtained it by this means, it is immaterial to the plaintiff whether he afterwards paid it over to another person, for whom he obtained it. It is immaterial to the plaintiff that he told him, at the time, that he obtained it for another." * *

"It would not relieve him, that he gave it to another person, that he spent it, or that he devoted it to the purpose for which he obtained it, though it might not be for any purpose of his own." * * * "They must satisfy you, in short, of the representations, the falsehood of them; that the defendant knew they were false

when he made them, and made them for the purpose of obtaining money ; and that the plaintiff, in the exercise of such prudence, care and discretion as his capacity would enable him to use, relied upon them, and parted with his money in consequence of them ; in other words, that the money was obtained from him by the defendant by false representations, which were material to enable him to make up his mind, and come to a conclusion as to whether it was safe to loan the money to Mr. Oliver." * * * "If he has thus dealt dishonestly with this man, the law requires that he should make amends." * * * "But if there was a fraud, and the plaintiff was in consequence induced to part with his money, then the plaintiff would have a claim upon him." * * *

"If then, upon these principles, you come to the conclusion that he is liable, the next question is as to the amount; and all I have to say upon this point is, simply, that he is liable for such amounts of money, or its equivalent, as he has obtained by means of this fraud, with interest on the same from the date when the defendant received it."

There was nothing in the rest of the charge to modify the instructions thus given.

The plaintiff obtained a verdict for $3,503.50.

To the instructions which we have quoted, the defendant took exceptions.

*Tallman & Larrabee* and *W. Gilbert*, for the defendant.

*N. M. Whitmore* and *J. S. Baker*, for the plaintiff.

PETERS, J. In our view of the facts of this case, the instruction complained of was erroneous. There was evidence tending to show that the plaintiff made certain loans to one Ezekiel Oliver; that he was induced to do so by means of certain false and fradulent oral representations, made by the defendant, concerning the financial credit and ability of Oliver ; that the money was paid by the plaintiff into the hands of the defendant, as the bailee or agent of Oliver, and immediately passed by him to his principal.

The jury, among other things, were instructed, substantially, that it was immaterial whether the defendant paid the money over to Oliver or not; or that he informed the plaintiff, when he obtained the money, that he got it for Oliver; or that he, in fact, got it for Oliver, and upon his credit, provided it was passed to him through the defendant's hands.

We think that these facts would bring the case within the Statute of Frauds; and that, for that reason, the instruction cannot be sustained. Besure, in this case the statute was not specially pleaded by the defendant, nor was it required to be, where the declaration contained only the general count of money had and received, as the nature of the claim alleged was not thereby disclosed to him. *Boston Duck Company v. Dewey*, 6 Gray, 446. Nor does it appear that the evidence alluded to was admitted against the objection of the defendant, but it was so interwoven with the other testimony, which was admissible, that any attempt at separation in the story of witnesses would have been impracticable. We are of the opinion that the defendant was guilty of no laches that should debar him of this defence.

The declaration does not, of itself, set out the particular facts which show the wrong complained of to be within the Statute of Frauds. Nor is that necessary in order to make a defence under the statute available. The language of the act is that "no" action shall be maintained "by reason of" any representation. It does not require that the plaintiff must, in terms, declare upon the representation. The true test whether the cause of action, in whatever form alleged, comes within the statute is, whether the action can be sustained without proof of the representation. If such proof is essential to the action, the statute applies. It is immaterial that the defendant may have had some design of obtaining an advantage to himself in consequence of the loan to Oliver, or that such a thing resulted from the transactions, provided the primary object of the representations was to induce the procurement of a credit to Oliver, and the loans were obtained thereby. In such case the protection extended by the statute is absolute and

complete. These propositions are directly maintained by the following authorities. *Kimball v. Comstock,* 14 Gray, 508; *Wells v. Prince,* 15 Gray, 562; *Mann v. Blanchard,* 2 Allen, 386; *McKinney v. Whiting,* 8 Allen, 208; *Haslock v. Ferguson,* 7 Ad. & Ell., 94; Browne on Statute of Frauds, § 184; *Hearn v. Waterhouse,* 39 Maine, 96.

This view of the case does not necessarily deprive the plaintiff of all remedy. The rulings and instructions now complained of would undoubtedly be right, should it appear at another trial that the credit for the loans was given to the defendant, instead of to Oliver. The statute was evidently intended to bar only actions for verbal representations, made with the intent that the person concerning whom they are made may obtain credit money or goods thereupon. *Norton v. Huxley,* 13 Gray, 287. Or should the plaintiff be able to show that he parted with his money in consequence of representations made by Oliver himself, of which the defendant had knowledge, concurring and conspiring with Oliver, in such case the defendant might be liable in tort, or for money had and received, the plaintiff waiving the tort. See *Knapp v. Hobbs,* 50 N. H., 476, a case in some of its features resembling the case at bar. *Richardson v. Kimball,* 28 Maine, 476. Or should it appear that the representations relied upon, if made by the defendant, related to the nature, character and title of the mill property of Oliver, rather than to his general character and credit pecuniarily, then an interesting question would arise, upon which judicial opinion is somewhat divided, whether or not the action can be maintained on that account. All these hypotheses of fact have some semblance of foundation, at least, in the evidence reported. See Browne on Statute of Frauds, §§ 182, 183; *Medbury v. Watson,* 6 Metc., 246; *Swann v. Phillips,* 8 Ad. & Ell., 457; *Lyde v. Barnard,* Tyrw. & Gr., (Exch.) 250.

*Exceptions sustained.*

APPLETON, C. J., CUTTING and DICKERSON, JJ., concurred.

WALTON, J., concurred in the result.