LOUIS BOYD ET AL., APPELLANTS, v. THE FARMER'S BANK ET AL., RE-SPONDENTS.*

Kansas City Court of Appeals. December 17, 1928.

---

*Corpus Juris-Cyc. References: Appeal and Error, 4 CJ, section 2986, p. 1004, n. 64; Frauds, Statute of, 27CJ, section 77, p. 171, n. 15; p. 172, n. 16; section 78, p. 172, n. 17.

*Leslie P. Robinson, John E. Powell, M. D. Campbell* and *Higbee & Mills* for appellants.

*Murrell & Murrell, L. M. Hyde* and *Ed C. Hyde* for respondent.

BLAND, J.—This is a suit for fraud and deceit. At the conclusion of plaintiffs' testimony the court sustained the separate demurrers of the defendants, resulting in plaintiffs taking an involuntary nonsuit with leave to set the same aside; subsequently the motion to set aside the nonsuit was made and overruled. Plaintiffs have appealed.

The facts show that plaintiffs are husband and wife and reside in Princeton; that on the 3rd day of January, 1920, plaintiffs had on deposit with the defendant, The Farmers Bank, in the name of plaintiff, Louis Boyd, the sum of $4600 and that Perry Coon was the cashier of said bank at the time. On said day plaintiff, J. N. Boyd, hereinafter referred to as Boyd, was in said bank for the purpose of getting a check cashed when Coon came from the directors' room and cashed Boyd's check. Coon then asked Boyd if the latter wanted to lend the money in the bank that was in the name of Boyd's wife and Boyd replied that he would ''if we can get a good loan . . . and it would be paid when due.'' Coon replied that he had two men in view, to-wit, Collings and Laws, who wanted to borrow money. Boyd testified, ''I questioned the loan—I did not know whether it was good or not; the cashier told me that it was absolutely A-1,'' that is, referring to the financial responsibility of Collings and Laws. Thereupon Coon called Collings from the directors' room and told him that Boyd ''said he would let you have that money.'' Boyd did not know that Collings was about until Coon called him. A note was filled out by Coon, in the presence of Boyd and Collings, in the sum of $4600, due one year after date, made payable to Louis Boyd or order. Collings signed the partnership name to the note and then appended his own to it. (Later Laws signed the note.) Boyd signed his wife's name to a check for the amount of the money and delivered the check to Coon, and the loan to Collings and Laws was consummated. Boyd testified that he made the loan on the recommendation of Coon; that he had confidence in Coon's judgment and that he would not have made the loan except upon the recommendation of Coon; that he had no knowledge of the financial standing of Collings or Laws.

There is some conflict in the testimony as to whether Collings and Laws were insolvent at the time the loan was made and defendants now insist that there is no evidence of the insolvency of these men or that if Collings and Laws were insolvent, that Coon knew of it. However, for the purpose of this case we may assume that there was testimony tending to show these facts. The evidence ·shows that the note was renewed from year to year until the spring of 1924 when an assignment was made by Collings and Laws for the benefit of their creditors; all of their assets were disposed of and plaintiffs received $334.80 as their share. This amount was applied upon the note. When the note became due in 1921, Boyd was able to collect the interest but unable to collect the principal. Boyd talked to Coon concerning the inability of Collings and Laws to pay the note and told Coon that Collings had said that he, Collings, had borrowed the money to apply on the indebtedness of Laws and Collings to the bank as the bank had been pressing them for a reduction of their indebtedness. The court refused to permit Boyd to testify directly to the conversation had between himself and Collings just referred to. The evidence shows that Laws and Collings were heavily indebted to the bank at the time plaintiffs' loan was made to them.

The petition was based upon the alleged oral false representation of Coon as cashier of the defendant. The Farmers Bank, that Laws and Collings were solvent and in good standing financially, and that "the note was· A-1" and would be paid when due. It alleges that ·Boyd believed these representations of Coon to be true and by reason thereof made the loan; that Boyd was ignorant of the insolvency of the Laws and Collings and their obligations to the bank. The petition alleges some connection between the two defendant banks which is unnecessary to detail herein.

The separate answers of defendants, among other things, placed the Statute of Frauds, section 2172, Revised Statutes 1919, as follows:

"No action shall ·be brought to charge any person upon or by reason of any representation or assurance made concerning the character, conduct, credit, ability, trade or dealings of any other person, unless such representation or assurance be made in writing, and subscribed by the party to be charged thereby, or by some person thereunto by him lawfully authorized."

It is insisted that the court erred in sustaining the separate demurrers to the evidence, offered by the defendants, for the reason that the Statute of Frauds has no application to the facts in this case. Without going into the question of the authority of Coon to make the representations, we have concluded that the action of the court was proper for the reason that the representations attributed to Coon, even if within the scope of his authority as Cashier of the bank, were clearly within the Statute of Frauds. These representations of Coon

were concerning the credit and ability of Collings and Laws and such representations were not made in writing.

However, it is contended by plaintiffs that the main purpose and object of the representations of Coon were to subserve a pecuniary purpose of the bank, the loan to Collings and Laws being merely incidental, and that, therefore, the representations were not within the Statute of Frauds; that defendants received the benefits of the transaction and cannot repudiate the same without offering to return what they received. The rule in reference to a situation of this kind is that when the representations mentioned in the Statute are made with the intent that a third person shall in the first instance obtain credit, money or goods, thereupon, in order to give a cause of action against the persons who made them, they must be in writing and subscribed, etc. [Cook v. Churchman, 104 Ind. 141; Mann v. Blanchard, 2 Allen (Mass.) 386; Medbury v. Prince, 15 Gray (Mass.) 362.] However, when the primary purpose of such representations was not to induce the extension of credit or delivery of money or goods to the persons concerning when they are made but to secure the execution of a contract to which the person making them is a party, such representations are not within the terms of the statute and need not be in writing in order to be actionable. [St. John v. Hendrickson, 81 Ind. 350; Williams v. Ravanna Bank, 289 S. W. 34.]

In Knight v. Rawlings, 205 Mo. 412, 428, the court quoted approvingly from Cook v. Churchman, supra, as follows:

" 'When the action is to recover damages for false representations made by a stranger to a contract concerning any of the subjects enumerated in the statute, it must fail, unless the representations were made in writing, duly signed, etc. This must be so, whether the representations were made as a result of a conspiracy, and with intent to perpetrate a fraud, or otherwise."

In Mann v. Blanchard, supra, l. c. 387, 388, it is said—

"Where the benefit to be obtained by the defendant is to be gained wholly through the credit given to another in consequence of the alleged representations, the primary object of these representations must be regarded as the procurement of the credit." [See, also, Cook v. Churchman, supra; Kimball v. Comstock, 14 Gray (Mass.) 508; Hunter v. Randall, 62 Me. 423; Brown v. Kimball, 84 Mo. 280.]

". . . a fraudulent representations by the defendant, that a third party was of good credit, although made for the purpose of enabling the third party to pay his debt to the defendant, has been held to be within the statute, and to require a writing." [Browns on the Statute of Frauds (5 Ed.), section 184.]

In Cook v. Churchman, supra, l. c. 147, the court said—

"It is immaterial that the person making the representations may have had same design of obtaining an incidental advantage to himself as a result of the credit intended to be secured thereby."

And at l. c. 148 of the Cook case the court said, "The motive with which they (the representations) were made beyond that of obtaining credit is immaterial." In the case at bar the benefit to the bank was obtained solely as the result of the transaction and was not gained directly through the contract itself (Williams v. Ravanna Bank, supra), and the Statute of Frauds applies.

We have examined the cases cited by plaintiffs and find them not in point. The case of Wahl v. Cunningham, 6 S. W. (2d) 576, involved a different section of the Statute of Frauds and was not based upon a misrepresentation. That suit was upon a contract made directly between plaintiff and defendants. It was held that the main and leading object and purpose in making the agreement was to subserve pecuniary business and personal purposes of the defendants and therefore that the agreements were original, independent undertakings of the defendants and not to answer for implied obligation or duty of a third person to plaintiff. The case of Johnson v. Farmers & Merchants Bank of Montrose, 287 S. W. 835, did not involve the Statute of Frauds.

It is claimed that the court erred in excluding the testimony above alluded to but even had it been admitted, it could not have affected the result.

The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.