MIDDLESEX COUNTY NATIONAL BANK *vs.* REDD AUTO
SALES, INC.

Middlesex.    December 5, 1957. — February 5, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, WHITTEMORE, & CUTTER, JJ.

*Frauds, Statute of. Deceit. Practice, Civil,* Appellate Division: what questions open. *Agency,* What constitutes.

A report to an Appellate Division of a District Court stating that by agreement "no evidence . . . [was] reported upon which the court based its findings of facts" imported that there was evidence supporting the judge's findings and precluded challenging certain findings as unwarranted by the evidence. [729]

A finding that a corporation made certain oral representations imported that they were made by a person having authority to bind it by them. [729]

The statute of frauds, G. L. (Ter. Ed.) c. 259, § 4, was a defence to an action of deceit by a bank against an automobile dealer founded on the fact that the defendant, knowing that the plaintiff would not finance a customer of the defendant unless the customer had made a down payment of one third of the price of an automobile purchased from the defendant, misrepresented orally to the plaintiff the amounts of the price and of the down payment and thereby induced the plaintiff to lend to the customer and to pay over to the defendant the supposed balance of the price. [729]

CONTRACT OR TORT.    Writ in the District Court of Somerville dated March 3, 1956.

The action was heard by *Sartorelli,* J.

In this court the case was submitted on briefs.

*Eli Taylor,* for the plaintiff.

*Abraham Newman,* for the defendant.

SPALDING, J.    Although described in the writ as an action of contract or tort, this is in essence an action of tort for deceit to recover for false representations alleged to have

been made by the defendant. The judge made findings of fact and found for the plaintiff. The Appellate Division, on report, vacated the finding and ordered judgment for the defendant. The plaintiff appealed.

Findings of the judge included the following. The plaintiff is a bank. The defendant was in the business of selling new and used automobiles. The plaintiff in the regular course of its business had financed customers of the defendant in the purchase of automobiles. On the occasion here involved, the date of which does not appear, the defendant called the plaintiff on the telephone and represented that one Rideout had purchased from it a 1951 Kaiser automobile; that the purchase price was $595; and that Rideout had made a down payment of $200, and desired to "finance the balance of $395." The defendant also gave the plaintiff a description of the automobile and supplied pertinent information as to Rideout's credit. The defendant knew that the plaintiff would not finance a customer unless he had made a down payment of one third of the purchase price. The plaintiff checked Rideout's credit and approved the loan. The defendant obtained the necessary papers from the plaintiff and, after having them executed by Rideout, returned them to the plaintiff and received from it the sum of $395 which represented "the alleged balance due on the motor vehicle after an alleged down payment of $200."

The defendant made certain repairs to the automobile in accordance with its agreement with Rideout, tagged it as sold, and stored it for Rideout. Rideout, due to financial difficulties, made only one payment of $30.65 on the note held by the plaintiff and never took delivery of the automobile; it is still in the possession of the defendant.

The purchase price of the automobile was in fact $495 and not $595, and the down payment was either $75 or $100 and not $200.

The judge found that the defendant "falsely and wilfully misrepresented to the plaintiff the purchase price of the automobile . . . and the amount of the down payment so as to induce the plaintiff to grant the loan to Rideout for

the payment to the defendant of the balance due . . . ; that the plaintiff relied upon such representations which were wholly within the knowledge of the defendant"; and that because of them the plaintiff made the loan and paid to the defendant the sum of $395.

All of the representations on which the judge based his findings were oral. The defendant pleaded the statute of frauds. G. L. (Ter. Ed.) c. 259, § 4.

Requests for rulings presented by the defendant fall into two groups. In one, the defendant requested the judge to rule that the plaintiff could not recover as matter of law; in the other, rulings were sought that the plaintiff could not prevail because of § 4 of the statute of frauds. Since both groups of requests present the same question, they will be dealt with together. The judge ruled that the statute of frauds did not preclude recovery and denied the requests. The Appellate Division reversed on the grounds, (1) that there was no evidence in the report as to the authority of the person making the representations to bind the corporation and (2) that the statute of frauds was a bar.

1. We are of opinion that the agency question was not open. The report stated that by agreement "no evidence is herewith reported upon which the court based its findings of facts." The Appellate Division interpreted this to mean that there was evidence from which the judge could make the findings he did. With this interpretation we agree. Throughout his findings the trial judge stated that the defendant made this or that representation. Since the defendant was a corporation and could only act through its officers or agents this is tantamount to a finding that the representations were made in such circumstances as to bind the defendant. If the defendant had desired to challenge the finding on the ground of lack of authority it was incumbent upon it, as the party claiming the report, to put into the report the evidence material to that issue. *Cucchiara* v. *Settino*, 328 Mass. 116. This it did not do.

2. We think that the Appellate Division was right in holding that the statute of frauds precluded recovery.

Section 4 of G. L. (Ter. Ed.) c. 259 reads as follows: "No action shall be brought to charge a person upon or by reason of a representation or assurance made concerning the character, conduct, credit, ability, trade or dealings of any other person, unless such representation or assurance is made in writing and signed by the party to be charged thereby, or by some person thereunto by him lawfully authorized."

The history of this statute is reviewed by Loring, J., in *Walker* v. *Russell*, 186 Mass. 69. In referring to Lord Tenterden's act on which our statute was based it was said, "The object of the enactment was to extend to a defendant in case of an attempt to charge him with the debt of another person by parol evidence of a false representation as to the solvency of that third person [the protection of written evidence] . . .. The typical case which the Legislature had in mind in enacting St. 1834, c. 182, § 5 [a predecessor of G. L. (Ter. Ed.) c. 259, § 4], was where the plaintiff is induced to extend a credit to the third person by representations made by the defendant as to his 'character, conduct, credit, ability, trade or dealings.' The case where a plaintiff is selling his goods to a third person and is induced to take the note of that third person on time in payment for them, relying on the defendant's representation as to his credit, is an example. . . . The case where the plaintiff is induced by representations of the defendant to indorse the note of a third person for the third person's accommodation, is another example. . . . Whether a particular representation is or is not within the statute does not depend alone upon what is said, but depends also upon the purpose for which the representation is made. . . . [A] representation that the third person owned a specified piece of property, which is not in form a representation concerning his 'character, conduct, credit, ability, trade or dealings,' was held to be within the statute when made to induce the plaintiff to accept the note of a third person in place of cash for goods sold to him, if it was 'made concerning the credit, ability, trade or dealings of' that other. *Hunnewell* v. *Duxbury*, 157 Mass. 1 " (pages 71–72). The court further said at page 73

that the statute applies "to representations made to induce the plaintiff to enter into a transaction which will result in a debt due to the plaintiff from the third person." See also *Cauman* v. *Biggar*, 251 Mass. 91, 93.

A representation otherwise within the statute is not taken out of the statute by the fact that the plaintiff's extension of credit to the third person also resulted in a benefit to the defendant. *Kimball* v. *Comstock*, 14 Gray, 508. *Wells* v. *Prince*, 15 Gray, 562. *Mann* v. *Blanchard*, 2 Allen, 386. Nor is a representation taken out of the statute by the fact that the representation concerns the defendant's own conduct or position.

It is apparent that the trial judge was of opinion that the statute was not applicable at least to the extent that the defendant misrepresented the amount of the down payment and, more especially, the amount of the purchase price. In other words, he evidently concluded that these were not representations or assurances "concerning the character, conduct, credit, ability, trade or dealings" of Rideout. This view is appealing, and were we to apply the statute, without regard to the judicial construction which has been placed on it over the years, we might reach the same result. In an illuminating opinion (*Keene Lumber Co.* v. *Leventhal*, 71 Fed. Sup. 598 [D. C. Mass.]) construing our statute, Judge Wyzanski was faced with a somewhat similar problem. There, according to the allegations of the complaint, the defendant falsely made oral statements to the plaintiff that he had invested certain sums of money in a corporation and was prepared to invest further sums and these statements were made to induce the plaintiff to advance credit to the corporation. The defendant filed a motion to dismiss (in substance a demurrer) on the ground that G. L. (Ter. Ed.) c. 259, § 4, was a bar. In holding that the statute precluded recovery the judge said at page 599, "It would have been possible to read the enactment strictly and to hold that the statute did not apply to a representation which included both a false statement as to another's solvency and a false statement of the speaker's own conduct or position. How-

ever, the English Court of King's Bench ruled otherwise
in 1838 . . . . In the case before it, *Swann* v. *Phillips*, 8 Ad.
& El., 457, 112 Eng. Rep. 912, the King's Bench was faced
with this situation. To induce A to lend money to J,
B orally stated that A could lend the money safely because
B had certain title deeds of J. B in fact had no such deeds.
A, having made the loan and lost money, brought an action
in assumpsit against B. B pleaded Lord Tenterden's Act.
A's counsel argued that B's oral statement was 'strictly
speaking a representation concerning the defendant [B]
himself.' (p. 459; p. 913). The King's Bench Division
rejected A's argument and upheld B's plea. Denman, C.J.,
said 'here is a loan contemplated, and the plaintiff is told
that he may safely make it because the title deeds are in the
defendant's custody. That is clearly a representation as to
Jellicorse's [J's] credit.' (p. 461, p. 913). To which Litter-
dale, J., added 'the defendant says, "You may trust him;
and my reason for saying so is, that I know the estate which
he has bought, and have his title deeds." That is one
entire representation concerning his credit.' (p. 461; p.
913)."

The court in the *Keene Lumber Co.* case then went on to
analyze the case of *Cauman* v. *Biggar*, 251 Mass. 91, and
considered it decisive of the case before it. As that case
comes closer to the case at bar than any case we have found
it deserves analysis here. From the opinion and the original
papers the facts most favorable to the plaintiff were these.
Biggar, the defendant, was treasurer of Lowe Donald &
Company, Inc., which was one of the financial backers of
the Merchant Tailors' Manufacturing Company (herein-
after called Merchant). Biggar orally represented that
$20,000 had been paid in, toward the capital of Merchant,
and $50,000 could be called. In fact only $6,600 had been
subscribed for and only $4,400 paid in. This representation,
which was false, was to the effect that Biggar's company
(Lowe Donald) and other investors had paid two fifths of
their subscription and were obligated to pay the balance.
Its purpose was to induce Cauman to lease real estate to

Merchant. The lease was executed and resulted in a loss to Cauman and he brought an action against Biggar and Lowe Donald for the loss alleged to have been caused by the false representation. The defendants contended that under § 4 of the statute of frauds no action could be brought upon the basis of an oral representation made in the course of inducing a plaintiff to extend credit to a third person (Merchant) even though the representation was a statement of fact as to what the defendant Lowe Donald and the other investors had done or would do for that third person. The trial judge directed a verdict for the defendants and this ruling was upheld by this court. The opinion, it is true, deals primarily with the question whether the statute applies where the representation is made to induce a landlord to rent premises to a tenant. But, as Judge Wyzanski points out in the *Keene Lumber Co.* case (*supra*), the decision "necessarily also covers the issue whether the statute applies to a case where the representation is a statement of fact about not only a third person but even about defendant himself."

It is difficult to find any distinction of substance between the *Cauman* case and the case at bar. In the *Cauman* case the representation to the plaintiff, in effect, was, "You may deal with Merchant because Lowe Donald & others have subscribed for its capital stock to the extent of $50,000 and have paid in $20,000." In the case at bar the representation of the defendant to the plaintiff was in substance, "You can safely lend $395 to Rideout to purchase an automobile from me because the purchase price is $595 and he has made a down payment of $200." To hold that the *Cauman* case was within the statute and that the present case is not, would lead to uncertainty in its interpretation and would result in the drawing of hair splitting distinctions.

It follows that the trial judge erred in denying the defendant's requests for rulings and that the entry must be

*Order of Appellate Division affirmed.*