Argued January 5, reversed and remanded January 24, 1968

BOOTHE, *Appellant, v.* BENNETT, *Defendant,*
and
NOCE, *Respondent.*
436 P. 2d 746

*Glen McCarty,* Portland, argued the cause and filed a brief for appellant.

*Gerald J. Meindl,* Portland, argued the cause and filed a brief for respondent.

Before Perry, Chief Justice, and McAllister, Sloan, Goodwin and Holman, Justices.

## GOODWIN, J.

This appeal involves the application of ORS 41.530, which provides in substance that no evidence, except in writing, is admissible to charge a person upon a representation as to the credit, skill, or character of a third person.

In March, 1964, the defendant Bennett asked the plaintiff to guarantee a bank loan to Bennett in the amount of $10,000. The previous November, Bennett had borrowed $5,800 from the defendant Noce, who was his accountant. On March 12, 1964, $2,011.67 of this debt remained unpaid. A few days before March 12, Bennett had represented to the plaintiff that he needed $10,000 temporarily to carry the inventory for his business, and that the reason he was short of cap-

ital was that he had recently repaid the $5,800 which he owed Noce. Plaintiff thereupon, so he testified, telephoned Noce and asked whether or not Bennett had repaid the $5,800 which he had borrowed. Noce (according to the plaintiff's offer of proof) replied that Bennett had repaid him in full upon request. It later developed that, at the time of the call, Bennett had not repaid Noce in full. Bennett did, however, pay Noce in full on March 13, after the bank approved the loan which plaintiff had guaranteed. On March 13, the loan proceeds were deposited to Bennett's checking account (in the Head Office of the United States National Bank), Bennett drew his check in favor of Noce, and Noce carried the check to his bank (the Stadium Branch of the United States National Bank) and deposited it. On the same day, Bennett's checking account at the Head Office was charged with the check to Noce. The record contains no explanation of the expeditious handling of these transactions. In any event, Bennett soon took bankruptcy, and the plaintiff was damnified.

Alleging that the foregoing facts amounted to a fraudulent conspiracy, plaintiff brought this action against both Bennett and Noce. Plaintiff recovered judgment against Bennett and appeals from a judgment exonerating Noce. From the abbreviated record before us, we cannot tell whether Bennett testified. The case against Noce collapsed when the trial court rejected the plaintiff's testimony of his version of the alleged telephone call. Plaintiff assigns error to that ruling.

The question thus is whether a plaintiff in a case of this kind is absolutely barred by ORS 41.530 or whether he can, by alleging fraud, and by producing

other evidence of fraud, make admissible his own oral testimony to prove the defendant's part in the fraud.

Lord Tenterden's Act, 9 Geo 4, ch 14, § 6 (1828), upon which ORS 41.530 was patterned, was adopted to curtail the use of tort actions to evade the English Statute of Frauds, which in contract actions precluded relief for breach of an oral promise to answer for the debt of another. In an action upon the case for deceit, a plaintiff had been allowed to prove by oral testimony that the defendant had falsely represented to the plaintiff the virtue of a subsequently defaulting debtor as a credit risk. *Pasley v. Freeman,* 3 T R 51, 100 Eng Reprint 450 (KB 1789). Thirteen of the American states eventually followed with their own versions of the statute. See Annotation, 32 ALR2d 743 (1953); and Comment, 22 Cal L Rev 358 (1934).

The supposed evil against which the statute was directed was a swearing contest which a plaintiff who had nothing further to lose but his court costs could win if he could persuade the jury to believe his version of the story. See opinion of Grose, J., in *Pasley v. Freeman,* 100 Eng Reprint at 451.

The American jurisdictions that have considered the statute in fraud cases can be divided into two general groups: those that exclude the oral evidence of the conversation in all cases; and those that receive the oral evidence when it tends to prove fraud or conspiracy on the defendant's part. The cases, which fall into several subdivisions, are compared and discussed in the Annotation, 32 ALR2d supra. One important subdivision is made up of cases in which the defendant received a direct pecuniary benefit from his allegedly false representation. In some courts this fact is relied upon to justify an exception to the stat-

ute. *Wuerth v. Stivers,* 273 Mich 276, 262 NW 908 (1935).

■ The direct-benefit exception is related to the "leading object" or "main purpose" exception to the Statute of Frauds. If the main purpose of the promisor is to serve some interest of his own, then his oral promise is enforceable in a contract action notwithstanding the fact that the enforcement operates to discharge the debt of another. See Summers, *Contracts—1960 Oregon Survey,* 40 Or L Rev 202, 208 (1961) ; 2 Corbin, Contracts § 369 (1952). The "leading object" exception is recognized in Oregon. *Columbia Brick Works v. Freeman et ux,* 223 Or 109, 353 P2d 620 (1960); *Umpqua Valley Bank v. Wilson,* 120 Or 396, 252 P 563 (1927), noted in 6 Or L Rev 281 (1927) ; *Ludwick v. Watson,* 3 Or 256 (1870).

The trustworthiness of the proffered testimony about the alleged oral statements is substantially enhanced when corroboration is available from other evidence to prove that the statements were part of a fraudulent scheme. See *Haslock v. Fergusson,* 7 Ad & E 86, 112 Eng Reprint 403 (KB 1837). A statute designed to prevent fraud ought not to be allowed to shield it. Therefore, where the defendant benefits from the fraud and where evidence other than the alleged oral statement corroborates the existence of a fraudulent scheme, it is reasonable that the oral statement itself should be admitted.

Elsewhere in the law we find that testimony of a certain type must be corroborated before it can serve as the basis for a criminal conviction. See, e.g., ORS 136.540(1) (proof of corpus delicti necessary before confession can be received) and ORS 136.550 (a conviction cannot be had on the testimony of an accomplice unless it is corroborated by other evidence that

tends to connect the defendant with the commission of the crime). Testimony that is of doubtful value when standing alone becomes convincing when corroborated. The experience of the common law from which the foregoing rules evolved supports the view that when corroboration of the fraud is found in the record there is little danger of injustice in permitting the victim to testify. Indeed, the danger of injustice in such a case lies in refusing the testimony.

It must be conceded that any exception to an exclusionary statute tempts the court to taste the forbidden fruit before it decides whether or not it is really forbidden. In the case at bar the oral representation, if provable, was clearly fraudulent. In such a situation, the court must put the falsity of the statement aside temporarily and be very certain that the fraudulent nature of the statement itself does not become the sole reason for making an exception to the statute. To permit such an exception would be to nullify the statute, because a plaintiff can always say that he has been defrauded.

■ In the case at bar, a combination of reasons justifies the exception. The defendant personally and directly benefited from the representation he is alleged to have made to the plaintiff. There was circumstantial evidence that the defendant was privy to the alleged fraud. As Bennett's accountant, Noce may or may not have known Bennett's financial condition, but the alacrity with which Noce repaired to his bank with Bennett's check, under all the circumstances in this case, could be treated as evidence of scienter.

Noce relies on the case of *Brown v. Siemens,* 117 Or 583, 245 P 510 (1926), as having committed this court to the absolute rule that no oral evidence can

be received in such cases, regardless of fraud. That case does not justify quite so broad a generalization. In *Brown v. Siemens,* the president of a bank told an anxious depositor who presented a withdrawal form that the bank was solvent, and thereby induced him to leave his money in the bank. When, ten days later, the bank closed its doors as insolvent, the depositor was damaged. He attempted to recover in an action against the officer for fraud. In a dictum concerning the future trial, the court said that oral testimony of the fraud should be excluded under the statute on the ground that the representations about the solvency of the bank were not in writing. The case is distinguishable from the case at bar for the reason that in *Brown v. Siemens* there was no allegation that the banker received a direct and personal benefit by reason of his fraud. Indeed, since that case was before the court on demurrer, we have no Oregon decision applying the statute to facts similar to those in the case at bar.

■ We hold that where the record shows that the person who made the alleged statement benefited directly and personally from the representation, and where the evidence proves that the statement, if made, was deliberately fraudulent, and where there is, apart from the statement itself, evidence of scienter on the part of the defendant, the offer of proof is admissible as an exception to the statute.

■ In such a setting, the offer of proof contains more than a mere "representation as to the credit, skill or character of a third person." The offer becomes proof of a deliberate fraud. Accordingly, the overriding principle that a court should not permit a person to profit from his own wrong justifies the exception

to the rule. This court has stated repeatedly that the Statute of Frauds was not intended to be a shelter for frauds. See, e.g., *Bennett v. Pratt,* 228 Or 474, 493, 365 P2d 622 (1961), and cases cited therein.

Reversed and remanded.