**BROCK AND DAVIS COMPANY, INC., Plaintiff,**

**v.**

**The CHARLESTON NATIONAL BANK, Defendant.**

**Civ. A. No. 76–0608 CH.**

United States District Court, S. D. West Virginia, Charleston Division.

Dec. 20, 1977.

Roger B. Willetts, Edmunds, Freed, Cooley & Willetts, Waynesboro, Va., Harry A. Smith, III, Nuzum & Smith, Elkins, W. Va., for plaintiff.

Charles C. Wise, Jr., John O. Kizer, William W. Booker, Love, Wise, Robinson & Woodroe, Charleston, W. Va., for defendant.

## MEMORANDUM OPINION

COPENHAVER, District Judge.

Plaintiff, Brock and Davis Company, Inc., brings this action against defendant, The Charleston National Bank, claiming, *inter alia*, that the Bank fraudulently misrepresented the financial situation of one of its customers, Snowshoe Company, thereby inducing Brock and Davis to advance credit in the form of goods and services to Snowshoe and that, as a result, the Bank was directly benefitted and Brock and Davis was damaged in excess of four hundred thousand dollars. Jurisdiction is based on diversity and amount in controversy. The case is currently before the court on the Bank's motion to dismiss on the grounds that this fraud claim is barred by each of the statute of frauds, W.Va.Code, § 55–1–1 (1966), and the applicable statute of limitations, W.Va. Code, § 55–2–12 (1966).

The alleged fraud arose out of a land development and ski resort project undertaken by Snowshoe in 1973 in Pocahontas County, West Virginia. On September 6, 1973, the Bank entered into a loan commitment agreement with Snowshoe, taking a first lien on Snowshoe's real estate. Although there were several other banks which made loans to Snowshoe, the Charleston National Bank was its principal creditor and source of financial support.

In July, 1974, Brock and Davis, a Virginia corporation engaged in the general contracting business, entered into several contracts with Snowshoe under which the real estate on which the Bank held its first lien was to be improved. According to the amended complaint and more definite statement, during the week of September 16, 1974, J. K. McGoldrick of Brock and Davis, responding to the suggestion of the construction superintendent for Snowshoe, telephoned Robert Henzman, then an assistant vice president of the Bank, in order to discover the financial status of Snowshoe. It is alleged that despite the fact that the Bank knew or should have known that Snowshoe was bankrupt, McGoldrick was told that Snowshoe had a line of credit in excess of one million dollars, maintained a six figure balance with the Bank, and was otherwise financially sound. Allegedly relying on these representations, Brock and Davis continued to perform under its construction contracts until October 31, 1975, expending a total of $387,154.34 after November 1, 1974.

On November 1, 1975, the Bank elected to force the sale of all Snowshoe assets under its first lien deed of trust, including the improvements made by Brock and Davis on Snowshoe property in Pocahontas County, West Virginia. On December 4, 1975, Brock and Davis and two other creditors filed a petition for relief under Chapter X of the federal Bankruptcy Act, 11 U.S.C. §§ 701 *et seq.* (1970). According to the amended complaint, sometime thereafter Brock and Davis discovered the Bank's fraud. This action was filed on October 14, 1976.

In its motion to dismiss pursuant to the West Virginia statute of frauds, the Bank specifically relies on subparagraph (a) of § 55–1–1 which requires a writing signed by the party to be charged or his agent before an action can be brought:

To charge any person upon or by reason of a representation or assurance concerning the character, conduct, credit, ability, trade, or dealings of another, to the intent or purpose that such other may obtain thereby credit, money, or goods;

.  .  .

Brock and Davis' response is that the above-quoted section of the statute of frauds is not applicable where the representations were fraudulent and were made for the purpose of directly benefiting the defendant.

Subparagraph (a) of § 55-1-1, which was adopted together with the other provisions of the West Virginia statute of frauds,[1] is based on an identical section of the Virginia statute of frauds.[2] There are no reported decisions in either jurisdiction in which a court has construed the language contained in W.Va.Code, § 55-1-1(a).[3] In *Kemp v. National Bank of the Republic*, 109 F. 48 (4th Cir. 1901), the Fourth Circuit discussed the Virginia statute in some detail, but was not required to decide whether it applied. In that case a bank president had falsely told a depositor that the bank was in good condition, thereby inducing him to keep his money in the bank. After the bank failed, the president gave the depositor a personal note and deed of trust to cover his loss. The president's creditor then brought an action to annul the deed of trust on the ground that there was a failure of consideration as "no legal liability attached to Berry [the president] by reason of the misrepresentations made by him as to the condition of the bank, because the same were not in writing, and therefore invalid under the statute of frauds." 109 F. at 52. The court raised the question of whether the statute of frauds could be used to protect one from liability for fraud and quoted with apparent favor a commentator who characterized a Massachusetts case so holding as "disgraceful to an enlightened system of jurisprudence," 109 F. at 53. The court, however, did not resolve this question as it held that the statute of frauds could only have been raised by the bank president and was therefore not an applicable defense.

W.Va.Code, § 55-1-1(a) and Va.Code, § 11-2(1), as well as similar provisions in thirteen other states,[4] were derived from an 1828 amendment[5] to the original English statute of frauds.[6] This amendment, which is popularly known as Lord Tenterden's Act, was adopted in response to a 1789 case, *Pasley v. Freeman*, 3 T.R. 51, 100 Eng.Rep. 450 (K.B.1789). In that case, the court held a plaintiff could maintain an action against a defendant who had represented to the plaintiff that a third person's credit was good although he knew this to be false. The decision was soon criticized for creating a major loophole in the suretyship provision of the statute of frauds,

[I]f a Man asks, whether he may trust A. and the Answer is, that he may, the Person giving that Answer, knowing at the time that he cannot be trusted, must pay in Damages for the Consequence of that Misrepresentation: but, if the Answer is, that he has so good an Opinion of A's Circumstances, that he will pay the Debt, if A. does not, there can be no Recovery. *Ex Parte Carr*, 3 V. & B. 108, 110, 35 Eng.Rep. 420, 421 (Ch.1814).

1. W.Va.Code 1868 c. 98 § 1.

2. Va.Code § 11-2(1) (1964); Code 1840-41 c. 69 p. 78.

3. In *Conway v. Bailey*, 91 W.Va. 324, 112 S.E. 579 (1922), the court did not need to decide whether the statute of frauds would bar a suit for fraudulent misrepresentations which were made to induce the purchase of stock because it found that the state Blue Sky law exempted such representations from the operation of the statute of frauds.

4. Ala.Code § 8-9-5 (1975); Cal.Civ.Pro.Code § 1974 (West Supp.1977); Ga.Code § 105-303 (1968); Idaho Code § 9-507 (1948); Ind.Code § 32-2-1-6 (1971); Ky.Rev.Stat. § 371.010 (1970); Me.Rev.Stat. tit. 33 § 53 (1964); Mass. Gen.Laws Ann. ch. 259 § 4 (West 1959); Mich. Stat.Ann. § 26.924 (1970) [M.C.L.A. § 566.135]; Mo.Rev.Stat. § 432.040 (1969); Mont.Rev. Codes Ann. § 93-1401-8 (1964); Ore.Rev.Stat. § 41.530 (1975); Utah Code Ann. 25-5-5 (1953).

5. 9 Geo. 4, c. 14 § 6 (1828):
   [N]o Action shall be brought whereby to charge any Person upon or by reason of any Representation or Assurance made or given concerning or relating to the Character, Conduct, Credit, Ability, Trade, or Dealings of any other Person, to the Intent or Purpose that such Person may obtain Credit, Money, or Goods upon [sic], unless such Representation or Assurance be made in Writing, signed by the party to be charged therewith.

6. 29 Car. 2 c. 3 (1676).

It soon became a matter of course for lawyers to camouflage a suretyship claim as a deceit action in order take advantage of the *Pasley* case doctrine. To put an end to this practice, Parliament enacted the amendment introduced by Lord Tenterden to the statute of frauds. *W. B. Anderson & Sons v. Rhodes* [1967] 2 All. E.R. 850, 862 (Liverpool Assizes).

There have been approximately a dozen English cases involving Lord Tenterden's Act. See cases cited in *W. B. Anderson & Sons* [1967] 2 All. E.R. 850 (Liverpool Assizes) and *Banbury v. Bank of Montreal* [1918] A.C. 626. It is clear from these cases that a general exception is not made in England for fraud. Rather, the major English exception is that suits arising from negligent misrepresentations are not subject to the Act. *W. B. Anderson & Sons; Banbury v. Bank of Montreal.*

The reported American cases involving statutes similar to Lord Tenterden's Act can be divided into two general groups. The first consists of those jurisdictions which make no exception for a fraudulent statement that results in an extension of credit to another. There are currently three jurisdictions which fall within this group: Massachusetts, *Middlesex County National Bank v. Redd Auto Sales*, 336 Mass. 727, 147 N.E.2d 790 (1958); Missouri, *Boyd v. Farmers' Bank*, 223 Mo.App. 442, 14 S.W.2d 6 (1928); and Maine, *Hunter v. Randall*, 62 Me. 423, 16 Am.Rep. 490 (1873). A fourth jurisdiction, California, was aligned with this group [7] until 1970 when California amended its version of Lord Tenterden's Act for the purpose among others of providing an exception where the defendant himself derives a benefit.[8]

The second group consists of cases from six jurisdictions where actions involving the fraudulent misrepresentations are allowed notwithstanding the absence of a writing. This second group can be subdivided into two categories. There are two jurisdictions where the mere fact that the representation was fraudulently made is sufficient to avoid the statute of frauds: Kentucky, *Scott v. Farmers State Bank*, 410 S.W.2d 717 (1966) and Alabama, *Clark v. Dunham Lumber Co.*, 86 Ala. 220, 5 So. 560 (1889). The remaining four jurisdictions in this group recognize an exception for a fraudulent misrepresentation only where there is also either a fiduciary relationship between the plaintiff and defendant, Idaho, *W. G. Jenkins & Co. v. Standrod*, 46 Idaho 614, 269 P. 586 (1928) or some evidence besides the misrepresentation which corroborates the fraud; Oregon *Boothe v. Bennett*, 249 Or. 31, 436 P.2d 746 (1968) (evidence of direct benefit to the defendant and collusion between the defendant and the third party); Indiana, *A. S. C. Corporation v. First National Bank of Elwood*, 161 N.E.2d 179 (Ind. App.1959) (evidence of a conspiracy between the defendant and the third party); and Michigan, *Wuerth v. Stivers*, 273 Mich. 276, 262 N.W. 908 (1935) (evidence of direct benefit to defendant).

The trend of recent decisions favors the second group. Within the past two decades, cases involving statutes similar to W.Va.Code, § 55–1–1(a), have been reported out of four jurisdictions. Three of them fall within the second group. *Boothe v. Bennett*, 249 Or. 31, 436 P.2d 746 (Or.1968); *Scott v. Farmers State Bank*, 410 S.W.2d 717 (Ky.1966); *A. S. C. Corporation v. First*

---

7. *Bank of America v. Western United Constructors, Inc.*, 110 Cal.App.2d 166, 242 P.2d 365, 32 A.L.R.2d 738 (1952).

8. The 1970 California amendment to Lord Tenterden's Act added an additional sentence which directed that the statute "be applied in a manner that is consistent with the manner in which subdivision 2 of Section 1624 of the Civil Code [the suretyship section of California Statute of Frauds] is applied." 1970 Cal.Stats. c. 720, p. 1347, § 1 (amending Cal.Civ.Pro.Code § 1974). According to the Senate Legislative

Committee Comment, the purpose of this sentence was to insure that the statute did not bar an action:

> [W]here the representation is made under circumstances where there is an estoppel to assert the Statute of Frauds, where a fiduciary acting in a confidential relationship to his principal and owing him a duty to deal honestly with him nevertheless defrauds him, or where the *defendant receives a benefit to himself.* Cal.Civ.Pro.Code § 1974 (West Supp.1977). (emphasis added).

*National Bank of Elwood*, 161 N.E.2d 179 (Ind.App.1959). Only in the *Middlesex* case out of Massachusetts did the court adhere to the no-exception position which in that state dates back at least to 1860, *Kimball v. Comstock*, 14 Grey 508.[9] *Middlesex County National Bank v. Redd Auto Sales*, 336 Mass. 727, 147 N.E.2d 790 (1958).

■ In the absence of a ruling from the West Virginia Supreme Court of Appeals, it is this court's responsibility to choose the position that it believes would be adopted by that court. After an examination of the West Virginia cases involving other portions of the statute of frauds, the court is persuaded that the West Virginia Supreme Court of Appeals, if faced with the question, would join the growing number of courts which hold that a statute such as § 55–1–1(a) does not bar an action where there is evidence independent of the alleged misrepresentation which substantially confirms the fraud. This result is in keeping with the long standing principle in West Virginia that:

> "[T]he statute of frauds, having been enacted for the purpose of preventing fraud, shall not be made the instrument of shielding, protecting, or aiding the party who relies upon it in perpetration of a fraud or in the consummation of a fraudulent scheme." *Ross v. Midelburg*, 129 W.Va. 851, 861, 42 S.E.2d 185, 191 (1947), quoting from 3 *Pomeroy's Eq.Jur.*, § 921 (5th ed.).

■ In recognizing an exception for fraud, care must be exercised that the exception does not engulf the rule. As the Oregon court stated in *Boothe v. Bennett*, 249 Or. 31, 436 P.2d 746 (1968), the most recent case involving a statutory provision similar to § 55–1–1(a), "[T]he court must . . . be very certain that the fraudulent nature of the statement itself does not become the sole reason for making an exception to the statute. To permit such an exception would be to nullify the statute, because a plaintiff can always say that he has been defrauded." 249 Or. at 36, 436 P.2d at 748. This danger is avoided by limiting the application of the exception to situations where there is other evidence which, if believed, substantially confirms the fraud. Such a restriction is consistent with the long recognized rule that an oral contract for the sale of land will be enforced notwithstanding the statute of frauds where application of the statute would work a fraud upon the plaintiff and where there is sufficient independent evidence in the form of possession by the vendee to support the existence of the contract. *Campbell v. Fetterman's Heirs*, 20 W.Va. 398 (1882).

This limitation on § 55–1–1(a) is also in keeping with the leading purpose or direct benefit exception to the suretyship section of the West Virginia statute of frauds, § 55–1–1(d). *Tynes v. Shore*, 117 W.Va. 355, 185 S.E. 845 (1936); *Howell v. Harvey*, 65 W.Va. 310, 64 S.E. 249 (1909); *see generally*, Morris, *The Leading Purpose Doctrine as Applied to the Statute of Frauds*, 62 W.Va.L.Rev. 339 (1960). Here again one of the principal justifications for the suretyship exception is that the evidence of direct benefit substantially confirms the existence of the promise. *Davis v. Patrick*, 141 U.S. 479, 487–88, 12 S.Ct. 58, 35 L.Ed. 826 (1891) (a case involving the suretyship section of the Nebraska statute of frauds).

■ Inasmuch as the progenitor of § 55–1–1(a) was enacted in order to insure that the *Pasley* case did not destroy the effectiveness of the suretyship section of the statute of frauds, it follows that § 55–1–1(a) should be interpreted consistently with the direct benefit exception which has been engrafted upon the suretyship section.

---

9. In contrast, the court in *Boothe* could have affirmed the lower court's decision, which excluded evidence regarding a telephone conversation where the defendant had misrepresented the financial status of the bankrupt, by citing an earlier case, *Brown v. Siemens*, 117 Or. 538, 245 P. 510 (1926). Instead, the Oregon Supreme Court reversed the lower court and distinguished the 1926 case on the grounds that there was "no allegation that the banker [in *Brown*] received a direct and personal benefit by reason of his fraud." 249 Or. at 37, 436 P.2d at 748–49.

Even so, the mere fact that the Bank may have derived some benefit, however remote, from an extension of credit by another should not in and of itself be sufficient to remove the alleged misrepresentation from § 55–1–1(a). Rather, an exception to § 55–1–1(a) within the meaning of the "substantially confirm" rule would be deemed to arise where such a creditor derives the sole or other significant benefit from the extension of credit and where there are circumstances which indicate that the creditor knew at the time of his misrepresentation that he would so benefit. For example, in the case at bar, this requirement may be satisfied by a showing that at the time of any such misrepresentation, Snowshoe was insolvent and further that the Bank knew (1) Snowshoe was insolvent, (2) the Bank's collateral would be substantially improved by the work and materials to be furnished by Brock and Davis and (3) the value of the Bank's collateral was less than its outstanding loan.

◼ For purposes of the motion to dismiss, the complaint must be construed in a light most favorable to the plaintiff and its allegations taken as true. Only where it appears that plaintiff could prove no set of facts in support of its claim which would entitle it to relief should the motion be granted. *See, e. g., Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). Brock and Davis has alleged in both its amended complaint and more definite statement that the representations were made in order to benefit the Bank. The court is unable to conclude that it would not be possible for the plaintiff, Brock and Davis, to prove a set of facts which would make § 55–1–1(a) inapplicable.

The Bank also seeks to dismiss Brock and Davis' fraud claim on the ground that it was not filed within two years after the right to bring the action had accrued. W.Va.Code, § 55–2–12(a). According to the amended complaint, the fraud occurred during the week of September 16, 1974, more than two years prior to October 14, 1976, the date this action was instituted. The amended complaint, however, alleges that the plaintiff did not discover the fraud until after December 4, 1975, well within the two-year period. The issue is whether a cause of action for fraud accrues at the time of the commission of the fraud or at the time it was or could have been discovered by the exercise of due diligence.

The historical rule in West Virginia has been that a cause of action accrues at the time of commission, not discovery. *Thompson v. Whitaker Iron Co.*, 41 W.Va. 574, 23 S.E. 795 (1895). The current validity of this doctrine must be seriously questioned in light of the two most recent West Virginia Supreme Court of Appeals cases involving the meaning of "accrued" as it is used in § 55–2–12. *Family Savings and Loan, Inc. v. Ciccarello*, 207 S.E.2d 157 (W.Va.1974); *Morgan v. Grace Hospital, Inc.*, 149 W.Va. 783, 144 S.E.2d 156 (1965). In *Morgan*, the court reversed prior cases which in reliance on *Thompson* had held that in medical malpractice actions the period commences at the commission of the wrong, and not at the time of the discovery. In *Family Savings and Loan, Inc.*, the court extended the time-of-discovery rule to legal malpractice.

Inasmuch as the West Virginia Supreme Court of Appeals holds that the statute of limitations does not begin to run, assuming reasonable diligence, until the date of discovery for malpractice actions which only involve negligence, it would seem likely that the same discovery rule would be applied to fraud actions which involve intentional conduct and which tend to remain concealed from the victim long after the commission of the fraud.

◼ It is, however, unnecessary to resolve at this time the question of how the West Virginia Supreme Court would rule on this issue. As the court held in *Howard v. United Fuel Gas Company*, 248 F.Supp. 527, 529 (S.D.W.Va.1965), "the general rule [in West Virginia is] that a statute of limitations begins to run from the date of the injury, because it is only then that the aggrieved party has a right of action." In *Howard*, the court stated that it did not have to determine whether the time-of-commission rule or the time-of-discovery

rule applied to the negligent installation of pipes in that, until the pipes exploded, the plaintiff had no injury and, hence, no cause of action. The same would seem to apply in this case because, according to the amended complaint, Brock and Davis did not furnish any goods or services to Snowshoe in reliance on the Bank's alleged misrepresentations until after November 1, 1974, thus bringing the action within the two-year statute of limitations. Moreover, even under the time-of-commission rule, the statute does not begin to run where the wrongdoer continues to affirmatively conceal the alleged fraudulent act. *Cameron v. Cameron,* 111 W.Va. 375, 162 S.E. 173 (1931); W.Va. Code, § 55–2–17 (1966). Although such active concealment has not been specifically alleged, Brock and Davis may nevertheless undertake to show that the Bank acted in such fashion as to prevent it from discovering the fraud until after October 14, 1974. Accordingly, a motion to dismiss on this issue should not be granted.

█ Finally, the court finds without merit the Bank's further contention that Brock and Davis has split its cause of action by prosecuting this same claim in an adversary proceeding in the Chapter X reorganization of Snowshoe Company under the Bankruptcy Act, wherein a decision was rendered against Brock and Davis and in favor of the Bank, which decision is now pending on appeal to the United States Court of Appeals for the Fourth Circuit.

The Bank's motion to dismiss Brock and Davis' fraud claim is denied. An appropriate order will issue.